No. 30,850.

The T. M. Deal Lumber Company, *Appellee*, v. E. Frank Jones, *Appellant.*

(21 P. 2d 933.)

Opinion filed May 6, 1933.

*C. L. Kagey, Hal M. Black* and *L. M. Kagey,* all of Wichita, for the appellant.

*H. W. Hart, Glenn Porter, Enos E. Hook, Edward H. Jamison* and *Getto McDonald,* all of Wichita, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: This is an action upon an open account by the plaintiff lumber company against the defendant, engaged in the oil-well drilling business, for $1,325.50 with interest, for lumber sold defendant.

The defendant in his answer admitted his indebtedness to the plaintiff on account in the sum of $693.07 with interest, and offered to allow judgment to be taken against him in that sum, but denied the claim of plaintiff in every other particular. The jury returned a verdict against defendant in the sum of $699.83 without interest. To this amount the trial court, on motion of the plaintiff, added the part and portion of the admitted amount that was not involved and included in the controverted matters submitted to the jury, viz., $390.50, instead of $693.07 as actually admitted by defendant, which made a total of $1,090.33, for which judgment was rendered against

defendant with interest, from which defendant appeals, having filed a motion for a new trial which was overruled.

The appellant assigns error in the court adding to the amount of the verdict a part of the amount admitted by the defendant in his answer as being due the plaintiff, which the jury was instructed to do but very apparently failed to do. The jury answered special questions as to the amount still due the plaintiff from the defendant on the accounts as to three of the five wells for which lumber had been obtained, there being no controversy as to the items charged for the other two wells, and the general verdict was exactly the total of the findings as to these three controverted lists of items, for three particular wells. There is no point raised by either party concerning the division made by the trial court of the amount admitted by the defendant in his answer, considering it as only $390.50 instead of $693.07, the remainder of the admitted part being included in controverted lists. Such division or separation during the trial in no manner affected the fact of the actual amount admitted by defendant in his answer to be $693.07, which, together with interest admitted at the time of filing his answer, made a total of $702.31.

Appellant assigns error in the admission of testimony showing an offer by him to compromise this claim of the plaintiff immediately after this action was commenced and a garnishment run on his funds in the bank. The following is the evidence received and considered on what the appellant claims to be an offer to compromise.

"Q. You do remember authorizing me to draw an order on the Skelly? A. I remember talking to you about an order on Skelly.

"Q. I will hand you this paper and ask you if you remember that as being a copy of the order that I drew? A. It looks like the order you drew.

"Q. And you were to go to El Dorado with Mr. Hinkle at that time and get the order, which was for $900, accepted by the Skelly Oil Company, in part payment of this account? Is that not correct? A. In all payment on account, wasn't it?

"Q. It doesn't so state in the order, does it? A. It doesn't say the part payment, either, does it?

"Q. And you remember we found out that there was no officer in El Dorado who could accept this order and so this order was discontinued and never used? A. I don't remember that because they could accept it.

"MR. KAGEY: Waive the identification.

"THE COURT: Admitted.

"(Same marked 'exhibit D.')

"Exhibit D is as follows:

"ORDER.

*"To the Skelly Oil Company, a corporation:*

"Please pay to the T. M. Deal Lumber Company, or order, the sum of nine hundred dollars ($900), from the amount to become due me from you, on or about the 12th day of May, 1931, and charge such payment to my account.

"The above order is hereby accepted and the Skelly Oil Company, a corporation, agrees to pay the sum of nine hundred dollars ($900) to the T. M. Deal Lumber Company of Wichita, Kansas, on or about the 12th day of May, 1931.

"Dated April 23, 1931.                          THE SKELLY OIL COMPANY,

"By————

"Witness: ————.

"He remembers being in Mr. Jamison's office one day last April and instructing him to draw a check on the Skelly Oil Company for $900 in payment of the whole account.

"Redirect examination: The plaintiff sued and garnisheed his bank account.

"Q. Just tell what you said to him. A. I told him in order to release my bank account I was willing to give him an order on Skelly Oil Company for $900 for that account and he questioned whether Skelly Oil Company owed me $900 and wanted me to take it over there and have it O. Kd. by them and everything and I told him no, I wouldn't do that; I would file a bond and try this case.

"Q. It was an offer of compromise, was it? A. It was an offer to compromise the deal and save further trouble on it. I didn't sign that order. I never signed that order.

"MR. KAGEY: Now, we ask that all the testimony in reference to this be stricken out as merely an attempt to get before the jury an offer of compromise after the suit was filed.

"THE COURT: Overruled.

"Recross-examination: He has no recollection of ever having signed the order, or if the order was signed then the original was never delivered because the case was never settled."

Appellee insists that exhibit D and the evidence concerning it does not constitute an offer to compromise, nothing of this nature appearing in the document itself; that it is nothing more nor further than a proposed payment on account, that not being signed it can be neither an offer of payment nor settlement, that because the defendant later admitted in his answer an indebtedness to a certain amount, this transaction would only be an admission of a larger amount of indebtedness, and that under the authority of *Railroad Co. v. Stone,* 78 Kan. 505, 97 Pac. 471, and 2 Wigmore on Evidence, 2d ed., § 1061, it contained an admission of fact which was of probative effect, and was therefore admissible as evidence. It is difficult to find the probative feature in exhibit D in the light of the

distinctions so clearly defined in the Stone case, *supra.* There nothing was mentioned as to the amount involved and no offer was made, but a liability was there shown which was a probative feature proper for admission. The agent was quoted as saying that he came "to have a talk about that coal bill that the Frisco owed." It was there held:

". . . (3) that certain statements of the defendant's fuel agent, objected to as being only an offer to compromise, were competent as tending to show the use of the coal by the company and its liability therefor." (Syl.)

In the opinion the rule was said to be that offers of compromise are not admissible, unless they contain admissions of fact. This was where the railroad company had appropriated to its own use coal consigned by the plaintiff to others, and the statement above quoted contained the admission of liability for the coal.

The naming of a definite amount in the offer is not at all an admission of owing that amount, or any amount whatever. An offer of an amount to buy peace may be made when nothing is in fact owed. Exhibit D could not be termed a contract when not signed. At most it was a proposition not accepted.

A careful reading of the testimony in connection with exhibit D persuades us that the defendant was making an effort to release his bank account from garnishment, a terrible inconvenience to a business man, and made this offer to one of the attorneys for the plaintiff company to settle the matter and have his account released. To offer just the amount admitted a few days later in his answer, which was only about half the amount for which the action was brought, would under ordinary circumstances hardly bring the result desired. The verdict, with the part added by the court, was $1,090.33, while the defendant only admitted in his answer an indebtedness of $693.07, and the jury undoubtedly used the offer to compromise to make this difference and to the very evident prejudice of the defendant.

The authorities all concede that an offer to compromise is always inadmissible unless it contains an admission of fact.

"An offer to compromise a difference is not admissible in evidence in an action between the parties concerning that difference, but if the offer to compromise contains an admission of fact, that may be properly introduced in evidence." (*Kaull v. Blacker,* 107 Kan. 578, syl. ¶ 1, 193 Pac. 182.)

In an automobile collision damage suit the following ruling was made:

"In support of her cause of action plaintiff offered testimony of two other passengers in the jitney who were injured in the same collision, and in direct examination brought before the jury the fact that they had sued the taxicab company and settled their causes of action. They testified they did not know that their actions were against the owners of both cars. The court permitted the testimony to stand on the theory that the taxicab owner on cross-examination showed that the witnesses had sued the owners of both cars. *Held,* that the error in admitting proof of the settlement over objections was not cured by what occurred in the cross-examination." (*Hanks v. Cab & Baggage Co.,* 112 Kan. 92, syl. ¶ 4, 209 Pac. 977.)

Wigmore on Evidence, 2d ed., section 1061, (c), asserts the following rule:

"The true reason for excluding an offer of compromise is that it does not ordinarily proceed from and imply a belief that the adversary's claim is well founded, but rather a belief that the further prosecution of that claim, whether well founded or not, would in any event cause such annoyance as is preferably avoided by the payment of the sum offered; in short, the offer implies merely a desire for peace, not a concession of wrong done."

"The law favors the settlement of controversies out of court, for which reason a person is entitled to 'buy his peace,' or to endeavor to do so, without danger of being prejudiced in case his effort should fail. It is therefore well established that it is not permissible to show that one party to the litigation has offered to compromise." (22 C. J. 308. See, also, *Moore v. Connelly,* 119 Kan. 35, 237 Pac. 652.)

We conclude that there was error in the admission of exhibit D and the evidence concerning it, for which the cause must be reversed and a new trial granted.

No good purpose would be served in considering the other errors assigned.

The judgment is reversed and the cause is remanded with directions to grant a new trial.