No. 47,045

KENNETH PATTERSON, *Appellant,* v. EDWIN L. BURT, d/b/a WASH-INGTON SALES COMPANY, *Appellee.*

(516 P. 2d 975)

Opinion filed December 8, 1973.

*John Berglund,* of Clay Center, argued the cause, and was on the brief for the appellant.

*Charles D. Green,* of Manhattan, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a personal injury action in which Kenneth Patterson (plaintiff-appellant) allegedly sustained injuries when he slipped and fell in a concrete alley-way at the livestock sales barn of Edwin L. Burt (defendant-appellee). The case was tried to a jury in the district court of Washington County, Kansas, resulting in a verdict and judgment adverse to the plaintiff. Appeal has been duly perfected.

Trial errors are asserted for reversal of the judgment.

The evidence discloses that on December 13, 1967, appellant owned and operated a farm near Clifton, Kansas. On that date he transported 173 head of cattle from his farm to the livestock sales barn operated by the appellee at Washington, Kansas. The appellant testified he left home for the sales barn about 11:00 a. m., and arrived about 11:30 a. m.

The appellant claims after arriving at the sales barn he accompanied the appellee to the cattle pens adjacent to the sales barn,

upon the appellee's request. Once in the pen area, the appellant and appellee started dividing the appellant's cattle with assistance from two of appellee's employees, Mr. Kearn and Mr. Walters. During this process the appellant heard something behind him. In turning around to see what it was he slipped, knocking a cigarette from the appellee's hand. The appellant testified that while he was getting up he specifically remembers the appellee retrieving his fallen cigarette from the cattle manure and beginning to smoke it again. Appellant was sure he slipped rather than being knocked down by cattle. He did not know what he slipped on.

Immediately after falling the appellant said he felt severe pain which was localized in his back. He held onto a fence for a few minutes and then walked to his truck and rested by lying on the seat for about an hour. When his cattle were sold he procured his check and returned home. He did not notify the appellee or any of appellee's employees that he had been injured as a result of his fall.

Appellant told his wife about the accident that evening. He was not able to perform his routine chores. His back pains subsided in about a week, but his hip began to hurt. Soon after the accident and until March 5, 1970, appellant was treated by Dr. Ruff from Clay Center. By the end of February the appellant required a cane to walk, but he was experiencing less pain than before. One night while walking out of the house he slipped on some snow and fell down, landing on his knee, causing intense pain. Since Dr. Ruff was unavalaible that night, the appellant contacted Dr. Hanna an osteopathic physician and surgeon in Clay Center, Kansas, who obtained an appointment for the appellant with Dr. Lungstrom, an orthopedic surgeon in Salina, Kansas.

Dr. Lungstrum initially saw appellant on March 8, 1968. He diagnosed appellant's condition as acute herniated intervertebral disc on the left side which necessitated performance of a laminectomy. Based on his examinations Dr. Lungstrum was of the opinion that since the operation the appellant is not able to do heavy labor or farm work.

Sometime in April of 1968 the appellant sent his son to ask the appellee if he recalled the appellant's December fall. Appellant's son testified he did go to the appellee and that the appellee gave him a check for $90.00 instructing the son to, "Take it home to your Dad." The check was noted as an "adjustment for cattle", though it was drawn on appellee's farm account and not the livestock sales

company. According to the appellant, the appellee did not owe him an adjustment on the cattle sold in December. They were sold for $32,320.00 and he received a check for the full amount on the sale date. The appellant's wife cashed the $90.00 check very soon after the son brought it home.

It was the appellee's position throughout the trial that he was unaware the appellant had fallen or was injured while at the sales barn until sometime in April when the appellant's son visited him. He recalled the appellant being at the sales barn on December 13, 1967, but he does not recall requesting him to assist in dividing the cattle. According to the appellee he absolutely did not see the appellant fall. He stated that if a fellow beside him fell down, knocking a cigarette out of his hand, he would remember it. There was testimony from four men employed at the sales barn on the day in question stating they did not see appellant fall or hear anything about it for some time afterward.

The appellee objected to all references and testimony to the $90.00 check. The basis of the objection was that it was either evidence of a compromise between appellee and appellant, or of a humanitarian gesture by the appellee, both of which are inadmissible. The appellant contended such testimony was admissible as showing the appellee knew the appellant had fallen. Finally after the appellant, his son and wife had testified concerning the check the court sustained appellee's objection and instructed the jury to disregard all previous evidence touching upon the $90.00 payment.

The appellant testified he had incurred medical and hospital costs amounting to $2,913.62 and expended $2,998.06 on hiring labor to assist his son and wife in the farming operations. The appellant did not feel that he was able to carry on his farming tasks. At the time of the trial he was renting his farm out to a neighbor.

The issues framed by the pleadings in this case were the usual issues of negligence and contributory negligence normally encountered in a slip and fall case. The jury after hearing the evidence presented by the parties returned a verdict in favor of the defendant-appellee.

The appellant on cross-examination admitted he,

". . . [H]ad back trouble prior to December '67, like any farmer would. I went to the doctor in 1945 with a sprained back and I sprained

it again in 1960. 1966 when I was lifting a TV into a car after the Topeka tornado. My daughter lived in Topeka and she was in the middle of it. Any farmer lifts and sprains his back. I did not go to any other chiropractor with any of these episodes, all with Dr. Hanna before 1967. . . ."

The appellant contends the trial court erred in refusing to admit testimony of the appellee's payment of $90.00 to the appellant. The appellant argues it may be competent as evidence of an implied admission bearing on the following issues:

"a. Appellee's denial that the appellant sustained any injury on his premises;

"b. Appellee was standing next to appellant when appellant suffered the accidental injury;

"c. Appellee knew appellant suffered an injurious fall on appellee's premises."

The appellant asserts the appellee's $90.00 payment to the appellant's son constituted an admission of fact tending to prove liability and as such was admissible in evidence.

K. S. A. 60-452 provides:

"Evidence that a person has, in compromise or from humanitarian motives furnished or offered or promised to furnish money, or any other thing, act or service to another who has sustained or claims to have sustained loss or damage, is inadmissible to prove his liability for the loss or damage of any part of it. This section shall not affect the admissibility of evidence (a) of partial satisfaction of an asserted claim on demand without questioning its validity, as tending to prove the validity of the claim, . . ."

A number of Kansas decisions prior to the new code of civil procedure adhere to the rule that an offer to compromise is not admissible in evidence to prove liability, as an admission or otherwise. (See, *T. M. Deal Lbr. Co. v. Jones,* 137 Kan. 480, 21 P. 2d 933; and *Myers v. Goggerty,* 10 Kan. App. 190, 63 Pac. 296.) If the offer contains an admission of liability, the express admission is available as evidence. It is the implication of liability from the fact of the offer which is barred. (See, *Kaull v. Blacker,* 107 Kan. 578, 193 Pac. 182; *McComas v. Clements,* 137 Kan. 681, 21 P. 2d 895; and *Stanley v. Beaty,* 148 Kan. 492, 83 P. 2d 637.) The foregoing section of the new code made no changes in the Kansas rules.

Commenting on the foregoing section of the code of civil procedure Gard in his work (Gard's, Kansas Code of Civil Procedure, § 452.) said:

"As to offers, promises or payments, or acts of kindness done 'from humanitarian motives' there is a considerable body of case law in support of the rule of this section. The cases are assembled in 20 ALR 2d 291, showing general

accord and very little authority to the contrary. The test is whether the things done were from sympathy or benevolence rather than as an admission of liability. The rule of this section does not and cannot resolve the doubt either way. It is a matter for the court to determine what the motive was before receiving or rejecting the evidence. Here again, is a place for the operation of the judge's sound discretion." (pp. 445, 446.)

There was no testimony in this case to establish the purpose of the $90.00 payment. It is not asserted as a partial satisfaction of an asserted claim by the appellant. Furthermore, there was no admission of liability by the appellee at the time the check was tendered to the appellant.

Upon this state of the record we cannot say the trial court erred in excluding the $90.000 check and all testimony relating thereto from evidence. The ruling of the trial court was well within its discretionary powers.

The second point assigned by the appellant is that the trial court erred in excluding cross-examination testimony of the appellee's expert witness, Joseph Gendel, M. D., that the appellant's disability would exceed 15% of partial permanent disability of the body by workmen's compensation standards.

The appellee called, as a medical expert, Dr. Joseph Gendel, an orthopedic surgeon from Topeka, Kansas, who had examined the appellant. In his opinion the appellant was physically able to do heavy work. On cross-examination when asked to rate the appellant on a workmen's compensation basis the doctor replied:

". . . I would judge this patient, on a workmen's compensation basis— there are special reasons for rating people workmen's compensation wise, different from public liability—one would be rating as having probably, I would judge, around, certainly not less than 15 percent of partial permanent disability of the body because of the injury sustained and the treatment from it."

The appellee objected to such a rating, contending the method of rating for workmen's compensation cases is not relevant to a common law personal injury action. The court sustained his objection, and instructed the jury to disregard the testimony.

Determination of this point on appeal is immaterial. Error which does not prejudice the substantial rights of a party affords no sound basis for a reversal of a judgment and must be disregarded. (*Critchfield v. Ernzen,* 181 Kan. 284, 310 P. 2d 930.)

The issue of liability in this case was determined adversely to the appellant by the jury. The testimony of Dr. Gendel, pertained to the extent of the appellant's damages. Under these circumstances

error, if any, in the exclusion of the testimony of Dr. Gendel as heretofore related becomes immaterial. (*Turner v. Railway Co.,* 106 Kan. 591, 189 Pac. 376; *Cope v. Kansas Power & Light Co.,* 192 Kan. 755, 391 P. 2d 107; *Scogin v. Nugen,* 204 Kan. 568, 464 P. 2d 166; and *McGlothlin v. Wiles,* 207 Kan. 718, 487 P. 2d 533.)

Where the plaintiff in a personal injury action fails to convince the trier of the fact that the defendant is liable, it becomes unnecessary for the trier of the fact to resolve the question of damages. Accordingly, it would follow that error, if any, in the manner in which the issue of damages was submitted to the trier of fact becomes immaterial.

The judgment of the lower court is affirmed.