No. 48,508

Kansas Savings and Loan Association, a corporation, *Plaintiff-Appellee,* v. Rich Eckel Construction Co., Inc., *et al., Defendants,* and Robert B. Olsen, Merrill R. Talpers, and David A. Welte, d/b/a Olsen, Talpers and Welte, *Defendants-Appellants.*

(576 P.2d 212)

Opinion filed February 25, 1978.

*Hugh O'Donnell,* of Olsen and Talpers, of Kansas City, Missouri, argued the cause, and *Charles R. Schnider,* of Schnider, Shamberg, and May, Chartered, of Shawnee Mission, and *Merrill R. Talpers,* of Olsen and Talpers, of Kansas City, Missouri, were on the brief for the appellants.

*Roy S. Bennett, Jr.,* of Shawnee, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an appeal from a mortgage foreclosure rendered in favor of the plaintiff-appellee, Kansas Savings and Loan Association, a lending agency with its offices located in Shawnee Mission, Kansas. The defendant, Rich Eckel Construction Company, Inc., is a corporate real estate developer in Johnson county. The defendants, Robert B. Olsen, Merrill R. Talpers, and David A. Welte, are partners in a firm engaged in the general practice of law in Kansas City, Missouri. In this opinion we will refer to these defendants as the Olsen partners. There were other

party defendants claiming various interests in the mortgaged property. With the exception of the Olsen partners, the controversies between the plaintiff and Rich Eckel Construction Company and the other defendants have been determined in the district court. The sole controversy on this appeal is between the Kansas Savings and Loan Association and the Olsen partners.

The essential facts in the case are not in dispute and are as follows: Rich Eckel Construction Company, Inc., undertook the development of Whispering Hills subdivision in Johnson county. It was to be a rather extensive real estate development involving several large tracts of land. The financing for the project was provided by the plaintiff Kansas Savings. In 1972-1973 Rich Eckel Construction executed three notes and four mortgages to Kansas Savings. All of the land subject to the mortgages was located in the same general area and was involved in different phases of development of the project. Certain provisions in each of the mortgages provided for the waiver of the right of redemption by the corporate mortgagor and the sale of the mortgaged property en masse and not in parcels in the event of a foreclosure sale. It is undisputed that as a part of the financial plan for developing Whispering Hills, Kansas Savings and Rich Eckel Construction agreed that, as individual lots were sold to individual purchasers, a partial release of the mortgage lien on the lot sold would be executed by Kansas Savings upon the payment of $10,500 with interest. By this procedure the purchaser of an individual lot could obtain his own financing and, as to that lot, Kansas Savings would no longer have a mortgage lien interest. Such provisions will be discussed later as necessary in determining the questions of law raised on this appeal.

For some period of time prior to September 1975, Rich Eckel Construction Company had employed the Olsen, Talpers, and Welte law firm to perform legal services of various kinds, including representation in certain litigation involving the construction company. The record indicates that Rich Eckel Construction encountered financial difficulties. In February of 1975, Rich Eckel Construction conveyed twenty-one vacant lots in the Whispering Hills subdivision to the Olsen partners as part payment of attorney fees owed to the law firm by the construction company. It appears that this conveyance was in the form of a general warranty deed which contained no limitation or condi-

tion on the title thereby conveyed. The deed was recorded and the interest conveyed in the twenty-one lots was, of course, subject to the prior recorded mortgages to Kansas Savings.

In the summer of 1975, Rich Eckel Construction defaulted on its payments under the various mortgages. Kansas Savings thereupon filed petitions in three separate cases in the Johnson county district court to foreclose the four real estate mortgages on the vacant lots and tracts which had not theretofore been sold by Rich Eckel Construction Company. One action for foreclosure did not involve the property owned by the Olsen partners. Petitions filed in two cases involved mortgages which covered the twenty-one lots Rich Eckel Construction had conveyed to the Olsen partners. Hence, it was necessary to make the Olsen partners parties in those two cases. In passing, it should be stated that there was nothing unusual about the petitions filed seeking foreclosure of the various mortgages. As to the defendants Olsen partners, the petition in the two cases simply alleged that Olsen, Talpers, and Welte claimed some interest or lien in certain described lots by virtue of a conveyance, which interest or lien was subject to the superior mortgage lien of the plaintiff.

On October 14, 1975, the Olsen partners filed answers in the two cases in which their property was involved. Both answers consisted of a general denial of certain allegations and a request that their lots be sold at foreclosure sale individually rather than by the entirety. The name of Park McGee, a Johnson county lawyer, appeared on each answer as counsel below the name of the Olsen, Talpers, and Welte firm. The defendant, David A. Welte, certified that a copy of each answer had been mailed to the plaintiff's attorney on October 13, 1975. Separate answers were also filed by the other defendants, including Rich Eckel Construction Company. At this point all three cases were at issue and ready for pretrial proceedings.

On October 16, 1975, plaintiff Kansas Savings filed a motion to consolidate the three foreclosure actions "for the purpose of discovery and other pretrial matters for trial" for the reason that there were a substantial number of common questions of fact and law. This motion was set for hearing on December 10, 1975, before District Judge Herbert W. Walton. A copy of the motion to consolidate was mailed to David A. Welte on behalf of his law firm. A hearing was held on the motion to consolidate on De-

cember 10, 1975. At that time an order of consolidation was entered. It was also agreed among the parties who actually appeared that the hearing should serve as an informal pretrial conference in order to expedite the case in view of the fact that all parties had been notified of the hearing. There was no appearance by any of the Olsen partners nor by Park McGee as local counsel on their behalf. The issues of fact in the case were determined by the court and by the parties present on December 10 to be as follows:

(1) Whether or not the mortgages were in default;

(2) what amount was due under each mortgage; and

(3) what property was covered under each of the three mortgages.

These three issues are, of course, the basic issues in any action to foreclose a real estate mortgage.

On January 30, 1976, the plaintiff Kansas Savings filed a motion for judgment on the pleadings in the three cases as consolidated. This motion was set for hearing on March 25, 1976, before Judge Walton. A copy of the motion, including a copy of the notice of hearing, was mailed to Park McGee as attorney for the Olsen partners on January 30, 1976. There apparently was some understanding between Kansas Savings and Rich Eckel Construction Company that witnesses would be available to present evidence on the status of the mortgages if it became necessary.

On March 25, 1976, a hearing was held on the plaintiff's motion for judgment on the pleadings. The Olsen partners complain on this appeal that at this hearing they were denied their day in court and an opportunity to present evidence on their own behalf. It appears that immediately prior to the formal hearing a brief conference was held in the chambers of Judge Walton. A record was not made of this conference. It is undisputed that the defendant Robert B. Olsen, representing himself and his law firm, advised the court that their local counsel, Park McGee, had ceased to represent them because of some conflict of interest only thirty-six hours prior thereto. For this reason, Olsen objected to proceeding with plaintiff's motion for judgment on the pleadings at that time. Olsen also informally objected to the introduction of any evidence by plaintiff as inappropriate to support its motion for judgment on the pleadings. Notwithstanding these objections, the district judge ordered that a trial to the court proceed forth-

with on the three issues of fact which had been agreed upon at the pretrial conference on December 10, 1975. Thereupon, witnesses were called by Kansas Savings and documentary evidence was admitted showing the mortgages were in default, the amount of unpaid sums due on each mortgage, and the property covered under each of the mortgages. The evidence also established the existence of the agreement between Kansas Savings and Rich Eckel Construction Company to release any lot when sold, by the payment of $10,500. Further testimony of Rich Eckel confirmed the status of the various notes and mortgages as shown by the documents introduced by Kansas Savings. The defendants, Olsen partners, neither offered evidence nor did they place on the record either of the objections to proceeding to trial which they had earlier made in the judge's chambers. At the conclusion of this hearing, the plaintiff Kansas Savings was granted judgment in each of the three cases as consolidated. The amounts due on each mortgage were determined; the four mortgages were foreclosed; and, subject to a further determination by the court with reference to certain claims of the Whispering Hills Homes Association which are not involved here, the property described in the mortgage in each case was ordered sold in the entirety and not in parcels and without a period of redemption allowed to the mortgagor, Rich Eckel Construction, or to the Olsen partners after the foreclosure sale.

It is important to note that in its judgment the district court did provide a right of redemption to the Olsen partners prior to the foreclosure sale. The Olsen partners were given the same privilege previously afforded purchasers of individual lots to obtain release of any of the twenty-one lots previously deeded to them, upon payment to the plaintiff of the sum of $10,500, plus interest from date of default, for each lot so released. Defendants were thus given a period of time beginning on March 25, 1976, and ending on the date of the sheriff's sale, September 9, 1976, a period of approximately five and one-half months, in which to sever their parcels of land from the sheriff's sale and thus to avoid the order of the court that all of the property included under each mortgage was to be sold en masse. We are advised in the brief of counsel that the Olsen partners did not exercise their privilege to obtain a release of any of their twenty-one lots by payment of the stated amount.

On April 8, 1976, the Olsen partners, without aid of local Kansas counsel, filed a motion to reopen the record. On April 26, 1976, they filed the appeal to this court which is now before us for determination. On May 4, 1976, a hearing was held before Judge Walton on the motion to reopen the record. Robert B. Olsen appeared on behalf of the law firm, with no local counsel present. The stated purpose of the motion to reopen the record was limited to a request to create a record of the informal objections made by Robert B. Olsen to the court immediately prior to the evidentiary hearing on plaintiff's motion for judgment on pleadings held on March 25, 1976. There were other matters covered in depth by court and counsel at the hearing on May 4, 1976, which will be discussed under the points raised on the appeal.

On the appeal the Olsen partners raise five points, three of which involve the same basic issue and may be combined for the purpose of determining this case. We will first discuss the three points raised by the Olsen partners which, in substance, assert a claim that they were denied a fair trial and the opportunity to present evidence on their behalf at the hearing held on March 25, 1976. At the outset it should be noted that the four mortgages to be foreclosed in the three consolidated cases involved sums of money in excess of $1,500,000. Thus the primary controversy in the case was between the mortgagee, Kansas Savings, and the mortgagor real estate developer, Rich Eckel Construction. Obviously, none of the parties disputed the fact that the mortgages were in default. A determination of the sums due on each of the mortgages and the property to be sold at foreclosure sale was essentially a matter involving mathematical calculations following an examination of the books and records of Kansas Savings and Rich Eckel Construction. The trial court had the duty to dispose of this litigation without unnecessary delay. At the hearing on December 10, 1975, the trial judge went to the very heart of the controversy by listing the three basic issues of fact involving Kansas Savings and Rich Eckel Construction. Unfortunately, the Olsen partners did not appear at that hearing, although a copy of the motion and notice of hearing was mailed to the Olsen firm.

At the hearing on December 10, 1975, the court and counsel who were present agreed that the hearing would serve as an informal pretrial conference in order to expedite the case. As pointed out above, those issues were: Whether the mortgages

were in default; what amount was due under each mortgage; and what property was covered under each of the three mortgages. We do not read the answers filed by the Olsen law firm as raising any issues of fact other than those set forth above. The answers filed by the Olsen partners simply denied the execution of the notes and mortgages and that they were in default. The answers further denied allegations as to the existing liens and claims of other defendants. The prayer of each answer requested the court that, if the property was sold at foreclosure sale, it be sold lot by lot rather than in its entirety; that the rights of the defendants, Olsen partners, be recognized and protected at all stages of the proceedings; and that the plaintiff's petition be dismissed and costs be taxed against the plaintiff. Legal issues as to the Olsen partners' right of redemption and as to the validity of the clause in each mortgage requiring a sale of the entire property on foreclosure rather than in parcels were still undetermined.

Unfortunately, this case is unduly complicated by the fact that the plaintiff Kansas Savings filed a motion for judgment on the pleadings rather than requesting a trial of the case. Since there were issues of fact still to be determined, a motion for judgment on the pleadings was not appropriate when the parties appeared for hearing on March 25, 1976. At that time the trial court, instead of dealing with the motion as filed, proceeded to trial on the issues of fact pertaining to the status of the various notes and mortgages. Obviously, Robert B. Olsen, representing the Olsen partners, was caught by surprise. He was present for a hearing on a motion for judgment on the pleadings and was confronted by a trial to the court. Had the Olsen partners been prejudiced in this unusual procedure by being denied their right to present evidence, such action would justify the reversal of this case and the granting of a new trial.

The Olsen partners maintain on this appeal that the district court erred in granting plaintiff's motion for judgment on the pleadings in the face of genuine issues of fact raised at the pretrial conference on December 10, 1975. But the district court did not grant judgment on the pleadings. It held an evidentiary hearing on the factual issues raised and granted judgment on the basis of the evidence presented, consisting of testimony and documentary evidence from both Kansas Savings and Rich Eckel, in which the amounts due on the notes and mortgages and the property in-

volved thereunder were determined. Thus, if the district court has committed error, it is not for the reason that it improperly granted a motion for judgment on the pleadings.

The Olsen partners also complain that at the hearing on March 25, 1976, they were not given a reasonable opportunity to present evidence on the factual issues in the case and further that the district court erred in proceeding to trial in view of the withdrawal of their counsel, Park McGee, less than thirty-six hours prior to the hearing. These contentions would have merit if the Olsen partners could show that they were prejudiced by the action taken by the district court.

Unfortunately, we do not have before us a record of the proceedings held on March 25, 1976. In any event, the difficulty of an inadequate record was surmounted when the Olsen partners filed a motion to reopen the record on April 8, 1976. As noted above, this motion was set before Judge Walton on May 4, 1976. At this hearing, Robert B. Olsen appeared on behalf of himself and his law firm with no Kansas counsel present. Olsen complained to the district court that the court should not have proceeded to trial on March 25 in the absence of the Olsen partners' counsel who had withdrawn thirty-six hours before the hearing; that there should not have been an evidentiary hearing on a motion for judgment on the pleadings; and further that the Olsen partners were prejudiced by not being prepared at that time to present their evidence. Olsen stated that he wanted to reopen the record only for the limited purpose of showing that these objections were made to the trial court at the time.

After Olsen had stated his objections, Judge Walton immediately became concerned that his rulings had in some way prejudiced the rights of the Olsen partners. He advised Olsen that he wanted to ascertain what possible prejudice the Olsen firm could have suffered at the hearing on the status of the notes and mortgages. The judge asked Olsen if he had additional evidentiary matters to present which the Olsen partners were denied an opportunity to present on March 25, 1976. Olsen stated categorically that he had no additional evidence to present. Again the trial judge asked Olsen to state how the Olsen partners had been prejudiced because of the want of assistance of a Kansas attorney, resulting from Park McGee's withdrawal. Olsen stated frankly he did not know what Mr. McGee might have been able to do for the

Olsen partners. The trial court then pointed out that the Olsen partners had had a month and one-half to reevaluate the evidence pertaining to the status of the notes and mortgages. The judge again stated that he wanted to ascertain what type of prejudice might have occurred. The judge made it clear that he wanted to be fair to Olsen, but that there was no reason for the court to go through a proceeding in futility. In substance, the court asked Olsen what possible evidence he had as to the status of the notes and mortgages which had not been shown by Kansas Savings and Rich Eckel at the hearing on March 25, 1976. Olsen stated that he could not tell the court that the Olsen partners would have been able to prevail upon the court not to grant judgment on March 25, 1976. Furthermore, Olsen stated that the Olsen firm was not objecting to the sufficiency of the evidence to support the court's findings as to the status of the notes and mortgages. All Olsen wanted the court to do was to determine what objections were made prior to the formal hearing on March 25, 1976. The trial judge then stated that he would make an order to show that Olsen made the objections to proceeding with the hearing as Olsen had indicated. The judge then emphasized again that if there was anything prejudicial to the rights of the Olsen partners, he would consider any type of motion Olsen might file and would reopen the case to give the Olsen partners an opportunity to file any additional evidentiary matters. Olsen rejected this opportunity to offer additional evidence.

On the basis of the record before us, we have concluded that it would serve no useful purpose whatsoever to reverse the trial court and grant a new trial so that the Olsen partners can have another opportunity to present additional evidence as to the amounts due on each of the notes and mortgages and the properties covered thereunder. This court has always been concerned that litigants in the Kansas trial courts are given a full opportunity to present their evidence. (*Santee v. North,* 223 Kan. 171, 574 P.2d 191; *Farmers Union Central Cooperative Exchange v. Tomson,* 192 Kan. 274, 387 P.2d 202; *Richa v. Wichita Precision Tool Co.,* 190 Kan. 138, 373 P.2d 201.)

In this case we fail to see how the Olsen partners could have been prejudiced in any way by the trial court's determination of the factual issues presented by the pleadings. Error which does not prejudice the substantial rights of a party affords no basis for a

reversal of a judgment and must be disregarded. (K.S.A. 60-2105; *Patterson v. Burt,* 213 Kan. 463, 516 P.2d 975.) We decline to grant the Olsen partners a new evidentiary hearing and will proceed to determine the issues of law which have been raised by them on the appeal.

As their next point of error the Olsen partners contend that the trial court erred in denying them a right of redemption after the foreclosure sale as to the twenty-one lots which had been conveyed to them by warranty deed. It is the position of Kansas Savings that the right of redemption was specifically waived in each of the mortgages by the mortgagor, Rich Eckel Construction Company, Inc., and that such waiver of redemption after foreclosure sale was binding on the Olsen partners as grantees of twenty-one lots from the corporation. The determination of this question requires us to construe K.S.A. 1975 Supp. 60-2414 which provides in pertinent part as follows:

"60-2414. **Redemption of real property.**

"(a)  *Right of redemption by defendant owner.* Except as stated in paragraph (q) and *as otherwise provided by law,* the defendant owner may redeem any real property sold under execution, special execution, or order of sale, at the amount sold for, together with interest, costs and taxes, at any time within twelve (12) months from the day of sale, for the amount paid by the then holder of the certificate of purchase together with interest, costs and taxes to the date of redemption, and shall in the meantime be entitled to the possession of the property; but where the court or judge shall find that the lands and tenements have been abandoned, or are not occupied in good faith, the period of redemption for defendant owner shall be six (6) months from the date of sale. The right of redemption shall not apply to oil and gas leaseholds. *Any corporation organized under the laws of the United States, the District of Columbia or any state of the United States, may, as mortgagor, agree in the mortgage instrument to a shorter period of redemption than twelve (12) months, or may wholly waive the period of redemption as against said corporation mortgagor only and all such agreements when so made shall be fully binding on such mortgagor.*

"(b)  *Redemption by lien creditor.* For the first three (3) months after such sale, the right of the defendant owner to redeem is exclusive; but if no redemption is made by the defendant owner by the end of that time, any creditor of the defendant and owner whose demand is a lien upon such real estate may redeem the same at any time within six (6) months from the date of sale. All redemption periods and rights of lien creditors set forth in subsections (b), (c), (d), (e), (f), (g), (h), (o) and (q) of this section shall commence on the date of judgment or date of judicial sale, if any be ordered, and expire three (3) months thereafter, if the judgment of foreclosure finds no redemption for the defendant owner by reason of a valid waiver under subsection (a) of this section. The first creditor redeeming need only pay the amount sold for, together with interest, costs and taxes to the date of redemption. All other redemptions, with the exception of that of the

defendant owner or his transferee, shall be made under the terms of subsections (*d*), (*e*) and (*f*) of this section. Where the defendant owner or his transferee redeems subsequent to redemption by a creditor so entitled he shall pay the amount paid by the then holder of the certificate of purchase together with interest, costs and taxes to the date of redemption.

"(*c*) *Creditors who may redeem.* Any creditor whose claim is or becomes a lien prior to the expiration of the time allowed by law for the redemption by creditors may redeem. A mortgagee may redeem upon the terms hereinafter prescribed before or after the debt secured by the mortgage falls due.

.    .    .    .    .    .    .    .    .    .    .    .    .

"(*k*) *Transfer of right of redemption.* The rights of the defendant owner in relation to redemption may be assigned or transferred, and the purchaser or assignee thereof shall have the same right of redemption as the defendant owner; but the right of redemption shall not be subject to levy or sale on execution.

"(*l*) *Holder of legal title.* The holder of the legal title at the time of issuance of execution or order of sale shall have the same right of redemption upon the same terms and conditions as the defendant in execution, and also shall be entitled to the possession of the property the same as the defendant in execution." (Emphasis supplied.)

Counsel for both parties agree that Rich Eckel Construction Company, Inc., as a corporate mortgagor, effectively waived its right to redemption in the four mortgages. The issue which must be determined is whether the Olsen partners, as grantees of certain lots covered by the mortgage, are bound by the waiver of the corporate mortgagor. The Olsen partners rely upon the language in section (*a*) of 60-2414 which in substance provides that any corporation may, as mortgagor, wholly waive the period of redemption *as against said corporation mortgagor only and all such agreements when so made shall be fully binding on such mortgagor.* They further rely on section (*b*) which provides redemption rights to a lien creditor. On the appeal the Olsen partners for the first time have taken the position that they were not the owners of the twenty-one lots by virtue of their warranty deed from Rich Eckel Construction. They now claim they actually accepted the deed only as *security* for payment of their attorney fees. From this they maintain that they have the status of lien creditors. The conveyance of the twenty-one lots to the Olsen partners was by warranty deed absolute on its face. At no place in their pleadings did the Olsen partners claim only a lien on the property. In fact, at the hearing on May 4, 1976, Robert B. Olsen advised the court that the Olsen partners had taken title to the lots as part of the fee that was owed to them. At this late date, the Olsen partners cannot be permitted to change their position and

claim that they are actually lien creditors and not owners in fee of the twenty-one lots. We have concluded that any rights of redemption of the Olsen partners must depend upon their status as purchasers or transferees of the rights of the corporate mortgagor in the twenty-one lots. In this regard we note that, by virtue of section (k) of 60-2414 quoted above, the purchaser or assignee of the rights of the defendant owner shall have the same right of redemption as the defendant owner. Considering all sections of the statute together, we have concluded that 60-2414 should be construed so that a purchaser of the interest of the mortgagor in mortgaged property takes subject to the provisions of the mortgage. Thus a noncorporate assignee or purchaser of the interest of a corporate mortgagor which has waived its right of redemption is bound by that waiver of redemption. To hold otherwise would defeat the contractual rights of the mortgagee who has extended credit to a corporate mortgagor in reliance on the latter's agreement to waive its right of redemption in the case of a foreclosure sale.

K.S.A. 60-2414, as it existed in 1975, was not entirely clear on this point. However, we note that in 1977, section (a) of 60-2414 was amended to read as follows:

"(a) . . . Any corporation, general partnership or limited partnership . . . may, as mortgagor, agree in the mortgage instrument to a shorter period of redemption than twelve (12) months, or may wholly waive the period of redemption as against said mortgagor *and all persons receiving title from said mortgagor.* . . ." (Emphasis supplied.)

The 1977 amendment clarified the legislative intent. K.S.A. 1975 Supp. 60-2414 (a) should be construed in accordance with the amendment made in 1977. To summarize then, we have concluded that the waiver of the right of redemption, provided for in the mortgage by agreement of the corporate mortgagor, Rich Eckel Construction Company, Inc., is binding on the Olsen partners since they received title to the twenty-one lots from that corporate mortgagor. It follows that the district court did not err in denying a right of redemption after foreclosure sale to the Olsen partners. In passing it should be noted that the trial court did not completely deny to the Olsen partners an opportunity to protect their interest in the lots. The district court gave them the privilege of obtaining a release as to one or more of the twenty-one lots deeded to them by payment to Kansas Savings of the sum

of $10,500 plus interest for each lot released. This is the same right which was afforded purchasers of lots from Rich Eckel Construction Company. Under the circumstances we do not believe that the Olsen partners have any just complaint.

The final point raised by the Olsen partners on the appeal is that the district court erred in ordering the land covered by the mortgages in each case to be sold en masse, rather than by separate parcels. In entering judgment, the trial court decided each of the three cases separately and ordered three separate foreclosure sales, one under each case. Each of the mortgages involved contained a section 12 (a) which provided as follows:

"12. If default be made in payment of any installment of principal or interest of said note or any part thereof when due, or in payment, when due, of any other sum secured hereby, or in performance of any of Mortgagor's obligations, covenants or agreements hereunder.

"(a) All of the indebtedness secured hereby shall become and be immediately due and payable at the option of mortgagee, without notice or demand which are hereby expressly waived, and this mortgage may be foreclosed at any time after such default. *Any judgment for the foreclosure of this mortgage shall provide that all the land herein described shall be sold together and not in separate parcels."* (Emphasis supplied.)

In support of its position the Olsen partners argued that a sale en masse would deprive the Olsen partners of their right of redemption and an opportunity to protect their interest at the sale. The defendants direct our attention to a number of cases where the circumstances of the particular case made it inequitable for the mortgaged property to be sold on foreclosure sale en masse rather than in parcels. The plaintiff Kansas Savings maintains in substance that a mortgagor and mortgagee may lawfully agree in advance as to the manner of sale of the property after foreclosure and that such an agreement should be binding. Here each of the mortgages specifically provided that "any judgment for the foreclosure of this mortgage shall provide that all land herein provided shall be sold together and not in separate parcels." Kansas Savings further contends that, although the Olsen partners were not parties to that agreement, they nevertheless are bound by the provisions of the mortgage which was on file at the time they were conveyed title to the twenty-one lots.

Under the circumstances of this case we find nothing inequitable in ordering a sale of the property en masse as the parties agreed in the original mortgage. The parties to the mortgage

contemplated that, as individual lots were sold, each lot would be released from the mortgage by the payment of an agreed sum of $10,500 to the mortgagee. Rich Eckel Construction Company was in the business of developing and selling real estate by lots and apparently was unable to make sufficient sales of lots to keep up with the mortgage payments. There is no reason to suppose that better sales results could have been achieved at a public foreclosure sale than Rich Eckel Construction had achieved in the normal course of business. The Olsen partners have not demonstrated to us that the district court committed error in enforcing the provision of each mortgage that the property not previously released be sold en masse at a foreclosure sale. This is especially true in this case, because the trial court did in fact afford to the Olsen partners the opportunity to obtain a release of any lot by paying the agreed sum of $10,500 plus interest, which was the same right afforded other purchasers of lots from Rich Eckel Construction Company.

For the reasons set forth above, we have concluded that the defendants, Olsen, Talpers, and Welte, were not denied their rights as grantees of the twenty-one lots from the corporate mortgagor, Rich Eckel Construction Company, Inc. Finding no prejudice in the actions of the trial court, we find no legal reason for reversing the case or granting the defendants a new trial.

The judgment of the district court is affirmed.