No. 66,264

ROBERT and VICKY LYTLE, *et al.*, *Appellants*, v.
DONALD E. STEARNS, *et al.*, *Appellees.*

(830 P.2d 1197)

Opinion filed April 20, 1992.

*Dennis M. Clyde*, of Gates & Clyde, Chartered, of Overland Park, argued the cause, and *Thomas Kelly Ryan*, of the same firm, was with him on the briefs for appellants.

*Alice G. Amick*, of Niewald, Waldeck & Brown, of Kansas City, Missouri, argued the cause, and *Wm. Terry Fitzgerald*, of the same firm, of Overland Park, was with her on the brief for appellee.

The opinion of the court was delivered by

Six, J.: This is a personal injury case with a posture influenced by multi-defendant settlements before trial. We are called upon to review the application of our rule established in *Ratterree v. Bartlett*, 238 Kan. 11, 707 P.2d 1063 (1985), concerning the giving of settlement information to a jury. The issues arise from a survival and wrongful death action filed by the parents of a deceased daughter who was a passenger in a car involved in a head-on automobile collision.

We shall consider asserted trial court error in: (1) submitting settlement information to the jury; (2) allowing the introduction of an amended petition containing allegations of negligence against former defendants who had been dismissed from the case because of settlement; (3) allowing the cross-examination of one of the plaintiffs regarding an amended petition containing allegations of negligence against former defendants who had been dismissed from the case because of settlement; and (4) refusing to instruct on certain elements of damages, including the aggravation of a pre-existing condition.

The instant action was brought by the Estate of Deborah K. Lytle, deceased, (Debbie) and by Robert and Vicky Lytle, the natural parents and heirs of Debbie, against Donald E. Stearns individually and as sole proprietor of his ambulance business. The Lytles claim paramedical negligence (the failure to properly transport and to administer care to Debbie following the accident). The Lytles appeal from a jury verdict finding Stearns 0% at fault.

Our jurisdiction is under a K.S.A. 20-3018(c) transfer from the Court of Appeals.

We affirm the trial court's refusal to instruct on certain elements of damages, including the aggravation of a pre-existing condition. We reverse on the settlement information disclosure, amended pleading admission, and cross-examination issues, and remand for a new trial.

## Facts

A two-car collision occurred in 1988. Debbie and her boyfriend were passengers in the same car. Following impact, the boyfriend burned to death. One driver was trapped behind the steering wheel. Bystanders pulled one car away from the other that was burning.

A Kansas Highway Patrol Trooper was the first official to arrive at the scene. Debbie was lying in a ditch. Four persons were lying on the road. The trooper checked on each survivor. The trooper was most concerned about Debbie's condition. He ordered Life Flight, a helicopter emergency medical service from Kansas City, Missouri, to the scene.

The Miami County deputy sheriff arrived at the scene a few minutes before defendant Stearns. Stearns, an emergency mobile intensive care technician (a paramedic), is the owner and operator of Stearns & Associates Ambulance Service. He was accompanied by his wife, an emergency medical technician (EMT), and his 13-year-old son. A paramedic holds an advanced certification beyond an EMT. Stearns was the chief medical officer at the scene with decision-making authority for emergency medical treatment.

Stearns also operated ambulance services out of Louisburg and LaCygne. The Miami County dispatcher told him the situation was serious. Stearns requested the dispatcher to send the Louisburg unit to the scene. According to Stearns, he knew that his LaCygne unit monitored the calls and would also respond.

Stearns served as triage officer (triaging involves examining the trauma victims and deciding who needs help first). He conducted an initial assessment of the six surviving trauma victims within 30-45 seconds of arriving. Following the initial assessment, Debbie was treated first.

The ambulance patient form filled out for Debbie indicates her vital signs were first taken at 11:59 p.m. Debbie was noted to be very combative. Her lungs were clear. She was awake, alert, and oriented, and her pupils were equally reactive to light. She complained of severe pain in her back, legs, and belly. She had second-degree burns on her legs. Her condition was noted as critical.

Stearns contacted the trooper and the deputy sheriff and requested that Life Flight be cancelled. The trooper told Stearns that Life Flight was almost there. Stearns replied, "We can handle it." The deputy followed Stearns' orders and cancelled Life Flight. Life Flight was notified of the cancellation en route at 12:12 a.m. with an estimated time of arrival of five minutes at 12:17 a.m.

Stearns then suspected that something serious was wrong with Debbie. He administered oxygen and started an IV. According to Stearns, she responded to the treatment.

At the time that Stearns told the officers to cancel Life Flight, no other ambulances had arrived. Stearns knew that his two other units were responding. At 12:10 a.m., the Louisburg unit arrived staffed with an EMT and another of Stearns' sons, an EMT student. An ambulance from Osawatomie, not owned by Stearns, arrived at 12:22 a.m. At 12:33 a.m., Stearns' LaCygne unit arrived staffed with a paramedic, two EMTs, and an EMT student. The Osawatomie ambulance left the scene at 12:40 a.m. with one of the least injured bound for Miami County Hospital. Stearns LaCygne unit left the scene with a passenger whose condition was listed as "urgent" at 12:42 a.m. bound for Miami County Hospital. Miami County Hospital did not have facilities to treat a patient in critical condition.

Both the Louisburg and Paola units headed for the Overland Park Humana Hospital, which was approximately 40 miles from the accident scene. At 1:20 a.m., Stearns contacted the Johnson County dispatch center and established radio contact with Humana. Stearns testified: (1) He waited until he reached a point 10-12 miles from Humana where he could consistently reach Johnson County's dispatch center; (2) it was not feasible to have the Miami County Dispatcher contact Humana sooner; (3) he was concerned whether Humana could handle all four patients; (4) he

asked if Humana wanted all four or if Humana wanted him to divert; and (5) Humana told him to bring all four patients.

At Humana, Nurse Galbraith received the radio transmission. Dr. Barbara Holmes, the emergency room doctor, personally heard the transmission.

The records reflect a dispute between the parties as to the time Debbie entered Humana Hospital.

At 2:16 a.m., Debbie went into cardiac and respiratory arrest. Dr. Holmes was called and attempted to save Debbie's life. At 2:47 a.m., Dr. Holmes pronounced Debbie dead. The cause of death was hypovolemic shock resulting from internal bleeding from a ruptured spleen and a ruptured kidney. The experts who testified at trial generally agreed that Debbie could have been saved if she had received definitive care sooner.

The Lytles commenced the instant action naming as defendants Angela Jones (the driver of the car Debbie was in), the Board of County Commissioners of Miami County, and Stearns. The Lytles claimed that Jones was negligent in the operation of her vehicle. The theory of negligence asserted against the Board of County Commissioners involved the inspection, maintenance, and signing of the roadway. The allegations against Stearns rested on professional negligence in the failure to render proper emergency medical services.

Stearns filed a comparative negligence designation under K.S.A. 1991 Supp. 60-258a, naming Morris Schroeder (the driver of the other car) and Humana Hospital and its agents and attending physicians, among others. The Lytles filed a motion to add the entities designated by Stearns as additional defendants. The Lytles filed their second amended petition asserting claims against Schroeder, Humana Hospital, Emergency Department Physicians, Inc. (EDP), and Barbara Holmes, M.D. (EDP was the professional corporation employing Dr. Holmes.)

Prior to trial, the Lytles settled with all the defendants except Stearns. The claims against all other defendants were dismissed. Stearns was the only defendant at trial.

The jury was instructed to compare the fault of Stearns, Jones, and Dr. Holmes. The jury allocated the percentage of fault to Stearns 0%, Jones 75%, and Dr. Holmes 25%. Damages were assessed for medical expenses on the survival claim of $1,596.39

and $0 for noneconomic loss, including pain and suffering. On the wrongful death claim, the jury assessed damages of $3,516.38 for pecuniary loss (the burial expenses) and $0 for nonpecuniary loss.

### The Confidential Settlement Agreements

The release and settlement agreements each contained a confidentiality provision. Each of the six settling defendants (the Board of County Commissioners, Jones, Schroeder, EDP, and Dr. Holmes, and Humana) denied liability and stated that the payment of the specified amount to the Lytles should not be construed as an admission of liability.

Prior to trial, the Lytles filed a motion in limine to prohibit Stearns from referring directly or indirectly to any dismissal of parties who had previously been named as defendants. Stearns opposed the motion, arguing that *Ratterree v. Bartlett,* 238 Kan. 11, made the fact of settlement admissible. The Lytles argued that *Ratterree* only applies to *Mary Carter,* sliding-scale agreements. The trial court overruled the motion in limine but precluded Stearns from mentioning the settlements, stating that any mention of settlements would be by the trial court.

Following the cross-examination of Nurse Birch, an employee of Humana, Stearns moved the court to instruct the jury that Humana had been sued by the Lytles and had settled. The Lytles objected. The trial court ruled *Ratterree* entitled Stearns to have the settlement made known to the jury. The court stated it would inform the jury at a later date. The Lytles again objected. The trial court noted that their objection would be considered as a continuing objection.

The following day the Lytles again argued the issue. The trial court ruled that it would give the settlement instruction following Dr. Holmes' testimony as to both Humana and Dr. Holmes. Before Dr. Holmes testified, the Lytles stated that because the court had ruled it was going to instruct the jury that Dr. Holmes had settled, they intended to bring the settlement out on direct examination without waiving their continuing objection.

The Lytles called Dr. Holmes to testify. On direct, Dr. Holmes stated that she had at one time been named a party and had settled without admitting liability. According to Dr. Holmes, the

decision to settle was a business decision based on the cost of defense at trial. She stated that her deposition was taken before she was sued and again after she was sued. Her testimony at trial and in her two prior depositions had never changed.

On cross-examination, Stearns asked Dr. Holmes: "Now, Doctor, isn't it true that part of you settling in this case, part of your consideration is you agreed to help these people get Don Stearns?" Dr. Holmes denied the allegation. Stearns then raised questions about the content of the settlement agreement, emphasizing that the confidentiality precluded disclosure of the terms. Stearns then asked: "What price did you pay for your innocence?" Dr. Holmes asked the judge if she was supposed to answer, at which time there was a bench conference and the matter was dropped.

Following Dr. Holmes' testimony, Stearns withdrew his request to have the court instruct that Dr. Holmes had settled. The court then instructed the jury:

"Ladies and gentlemen of the jury, at this time the Court informs you that at one time Humana of Kansas, Inc., was a defendant in this case. The Court further informs you that the plaintiffs have settled their claims against Humana of Kansas, Inc., and as a result of that settlement that party, Humana of Kansas, Inc., has been dismissed as a defendant in this case."

At this juncture, it should be noted that Humana's fault was not compared on the verdict form. The trial court granted the Lytles' pretrial motion preventing the comparison of Humana's fault because Stearns provided no expert testimony that Humana departed from the appropriate standard of care.

The Lytles contend the trial court erred in relying on *Ratterree,* arguing that the rule in *Ratterree* only requires disclosure of *Mary Carter,* sliding scale agreements. The Lytles also assert that K.S.A. 60-452 and K.S.A. 60-453 prohibit evidence of compromise, settlement, or invalidity of a claim.

Stearns counters that *Ratterree* did not expressly limit the disclosure rule to *Mary Carter* agreements. According to Stearns, *Ratterree* gives the trial court discretion to prevent disclosure if the Lytles may be prejudiced. Stearns suggests the Lytles were not prejudiced because they opened the door as to Dr. Holmes' settlement by bringing the settlement out on direct and because there was "overwhelming evidence" bearing on the credibility of

Humana's employees and of Dr. Holmes. Stearns reasons that K.S.A. 60-452 and K.S.A. 60-453 do not apply because the statutes exclude evidence of settlement to prove or disprove a claim but do not exclude such evidence when offered for another purpose, such as proving bias or prejudice of a witness. Finally, Stearns asserts that the settlements are admissible under the abandoned pleadings doctrine.

## The *Ratterree* Case

Bartlett, one of the defendants in *Ratterree v. Bartlett*, 238 Kan. 11, 707 P.2d 1063 (1985), contended that the terms of the settlement agreement guaranteed Ratterree (the plaintiff): (1) the payment of Hernandez's (another defendant) policy limits; (2) Hernandez would remain in the lawsuit and participate in the trial; and (3) any money recovered by Ratterree over $150,000 would reduce Hernandez's obligation to Ratterree dollar for dollar regardless of the verdict against Hernandez. Such an agreement is a *Mary Carter* or sliding-scale agreement where the signing defendant may reduce an obligation by increasing the liability of one or more codefendants.

The actual terms of the *Ratterree* settlement agreement were not made known to this court; however, we assumed Bartlett's allegations were true. 238 Kan. at 24.

Due to the possibility of prejudice and collusion, most courts require disclosure of such agreements. We noted that each case must be considered on its own facts because some agreements appearing to be *Mary Carter* agreements will not result in aligning the plaintiff with the settling defendants. 238 Kan. at 28.

We observed the potential for injustice in multiple defendant secret settlement agreement tort actions and adopted the following rule:

"When a settlement agreement is entered into between the plaintiff and one or more, but not all, alleged defendant tortfeasors, the parties entering into such agreement shall promptly inform the court in which the action is pending and the other parties to the action of the existence of the agreement and its terms. If the action is tried to a jury and a *defendant who is a party to the agreement is a witness,* the court shall, upon motion of a party, disclose the existence and content of the agreement to the jury unless the court finds in its discretion such disclosure to the jury will create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Emphasis added.) 238 Kan. at 29.

The *Ratterree* rule is broad enough to include any confidential settlement in any tort action involving multiple defendants when the settling defendant is a witness and either remains a party to the action or retains some financial interest in the litigation.

In the case at bar, the agreements contained specific language that the settling defendants did not admit liability. The settlement amount paid to the Lytles was a fixed sum in exchange for a complete release. The settling defendants were dismissed and retained no financial interest in the action. None of the settling defendants had a pending claim against Stearns.

### K.S.A. 60-452, K.S.A. 60-453

K.S.A. 60-452 states in part:

"Evidence that a person has, in compromise or from humanitarian motives furnished or offered or promised to furnish money, or any other thing, act or service to another who has sustained or claims to have sustained loss or damage, is inadmissible to prove his or her liability for the loss or damage of any part of it."

K.S.A. 60-453 provides:

"Evidence that a person has accepted or offered or promised to accept a sum of money or any other thing, act or service in satisfaction of a claim, is inadmissible to prove invalidity of the claim or any part of it."

K.S.A. 60-452 is concerned with possible prejudice to the settling defendant on the issue of liability. K.S.A. 60-453 is concerned with protecting the full value of plaintiff's claim during settlement negotiations. The policy behind the statutes is to promote settlement. *Ettus v. Orkin Exterminating Co.*, 233 Kan. 555, 567, 665 P.2d 730 (1983).

Neither statute squarely applies in the case at bar. The evidence of settlement was not offered to invalidate the Lytles' claims against Dr. Holmes and Humana. However, the evidence of settlement was offered to invalidate the Lytles' claim against Stearns. The policy behind the statute—to promote settlement without fear the settlement will be used in evidence against the settling parties—supports the Lytles' position.

Stearns relies on *Slusher v. Ospital by Ospital*, 777 P.2d 437 (Utah 1989). *Slusher* adopted the *Ratterree* rule on secret settlement agreements. Such agreements should be disclosed to the jury unless the court finds that disclosure will create substantial

danger of undue prejudice, of confusing the issues, or of misleading the jury. 777 P.2d at 444.

Under the facts presented in *Slusher*, the failure to disclose the settlement was deemed harmless error. In finding harmless error, the Utah court relied in part upon the fact that Slusher's deposition was taken before settlement and no material inconsistency was shown in his trial testimony.

Both *Ratterree* and *Slusher* involved settlements with defendants who remained in the case to prosecute cross-claims. In the case at bar, Dr. Holmes and Humana did not remain in the case. The Lytles did have an incentive after the settlement to attempt to allocate most, if not all, of the fault on Stearns, the remaining defendant. However, Dr. Holmes and Humana were not joined until after Stearns asked that their fault be compared. The Humana nurses and Dr. Holmes never changed their testimony. They always blamed Stearns.

The trial court erred in disclosing the Humana settlement and in ruling that Dr. Holmes' settlement was admissible, forcing the Lytles to confront the dilemma to disclose or not to disclose the settlement in the direct examination of Dr. Holmes. The instant fact situation is not controlled by *Ratterree*.

### The Amended Petition As Evidence; Cross-Examination of Mr. Lytle

The Lytles' pretrial motion in limine also requested that Stearns be prohibited from introducing or referring to the fact "[t]hat other parties have previously been named as defendants to this action, or that plaintiffs' pleadings herein stated allegations of negligence and liability against said parties." The motion in limine was heard prior to trial. The Lytles argued that the fact they had originally named other defendants was irrelevant and lacked probative value as to whether Stearns caused or contributed to Debbie's injury and death. Stearns informed the court that he intended to use the Lytles' allegations against other parties contained in the pleadings (petition, amended petition, and second amended petition) in his opening statement. He argued that abandoned pleadings are admissible as admissions of a party. The trial court denied the Lytles' motion, reasoning that the pleadings were admissible as admissions against interest.

On the first day of trial, the Lytles presented the trial court with a supplemental motion in limine regarding Stearns' intended introduction of the petition, amended petition, and second amended petition. The Lytles argued that the additional defendants (Morris Schroeder, EDP, Humana, and Dr. Holmes) were named in the amended petition based upon Stearns' allegations of fault. Therefore, the additional fault allegations of the amended petition are not admissions of the Lytles, and it would be unfair to allow the pleadings to be used against them. The trial court abided by its prior decision, denying the Lytles' supplemental motion in limine.

Following the ruling, the Lytles informed the trial court that, due to its ruling, they would address their allegations against other defendants "up front" in the opening statement. The Lytles lodged a continuing objection to the ruling on the admissibility of the pleadings, stating they did not want to be deemed to have waived the issue. The trial court acknowledged the continuing objection.

Reference was made by the Lytles, in their opening statement, to the allegations against former defendants.

Stearns cross-examined Debbie's father, Robert Lytle, regarding the second amended petition which added Dr. Holmes as a defendant. Stearns brought out that the Lytles were alleging that Jones (Debbie's driver), the Board of County Commissioners, Schroeder (the other driver), Humana Hospital, and Dr. Holmes were each negligent and that each had caused or contributed to the injuries and death of Debbie. During the questioning, Stearns read the relevant paragraphs from the second amended petition alleging fault and causation as to each of the former defendants who had been sued because of Stearns' K.S.A. 1991 Supp. 60-258a comparative designation. The Lytles' attorney did not object. At the conclusion of this cross-examination, Stearns moved for the admission of the second amended petition. The Lytles referenced their continuing objection. The trial court admitted the second amended petition.

On redirect examination, the Lytles' counsel elicited from Robert Lytle that the second amended petition was filed because Stearns was alleging other parties were responsible for Debbie's injuries and death.

Stearns referred to the second amended petition in closing argument. (The Lytles' closing argument is not contained in the record on appeal.) Stearns argued that the Lytles sued everybody: Jones, the Board of Miami County Commissioners, Stearns, Schroeder, Humana, and Dr. Holmes. Stearns implied that the Lytles had settled with all of the absent defendants and had received money. With regard to the wrongful death claim, Stearns argued that Dr. Holmes was responsible and had paid for the harm she caused. Thus, Stearns argued, the Lytles had been compensated.

The Lytles contend that the trial court abused its discretion in permitting Stearns to introduce the prior pleading and in allowing Stearns to cross-examine Robert Lytle regarding the second amended petition. They assert that K.S.A. 1991 Supp. 60-208 authorizes the use of alternative notice pleading. Because some of the prior parties were joined as a direct result of Stearns' allegation of comparative negligence, the Lytles argue that Stearns' use of the prior pleadings was grossly unfair and prejudicial to them. Assuming, *arguendo*, that prior pleadings can be construed as an admission against interest, the Lytles contend the cross-examination of Robert Lytle regarding the pleadings was improper because clients are rarely in a position to explain the legal theories and strategies chosen by their attorney. We agree.

Stearns asserts that Kansas law allows the admission of abandoned pleadings into evidence as admissions against interest, subject to the party's explanation. According to Stearns, the Lytles took every opportunity to explain the pleadings and why certain pleadings were abandoned. Stearns asserts that alternative notice pleading has not changed this abandoned pleading rule. Stearns reasons that the Lytles were not compelled to join the former defendants in response to Stearns' allegations of comparative negligence, but made a tactical decision to do so. As to the cross-examination of Robert Lytle regarding the pleadings, Stearns contends that the Lytles have not preserved the issue for appeal because they did not object at the time of cross-examination. Addressing the merits, Stearns argues that such cross-examination was proper in light of the rule permitting the admission of abandoned pleadings and the explanation by the pleader.

An early line of our cases allowed abandoned allegations into evidence as admissions, subject to explanation by the pleader. *Tarkowski v. Banks,* 151 Kan. 898, 903, 101 P.2d 893 (1940); *Meek v. Deal, Adm'x,* 87 Kan. 319, 321, 124 Pac. 160 (1912); *Arkansas City v. Payne,* 80 Kan. 353, 354-55, 102 Pac. 781 (1909); and *Reemsnyder v. Reemsnyder,* 75 Kan. 565, 570, 89 Pac. 1014 (1907).

The Lytles distinguish the "early line" cases, reasoning that those cases were decided under the old code of procedure requiring "fact pleading" rather than the current "alternative notice pleading" authorized by K.S.A. 1991 Supp. 60-208. Further, the Lytles emphasize each "early line" case involved an allegation of a specific fact rather than a general claim as in the case at bar.

Prior code pleading was referred to as fact pleading. Pleading under the current code is sometimes referred to as notice pleading, which is free from hypertechnical considerations of whether the pleader has described the critical aggregate of operative facts. 1 Vernon's Kansas C. Civ. Proc., Author's Comments § 60-208.1, 491 (1963). K.S.A. 1991 Supp. 60-208 now requires only a bare-bones pleading that outlines the nature of the claim. Because broad discovery is available to fill in the gaps, there is no need for technical pleading. *Oller v. Kincheloe's, Inc.,* 235 Kan. 440, 446-47, 681 P.2d 630 (1984); 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-208, Comment, p. 38 (1979).

The cases in other jurisdictions generally hold that *allegations of fact* contained in pleadings are admissible in evidence as an admission by the pleader. See McCormick on Evidence § 265, pp. 780-84 (3d ed. 1984); 4 Louisell and Mueller, Federal Evidence § 425, 304-07 (1980). The *factual matter* contained in a pleading made by a party's attorney is admissible as an admission of the party. *Frank v. Bloom,* 634 F.2d 1245 (10th Cir. 1980).

There is a split of authority regarding the admissibility of pleadings containing claims of comparative negligence against defendants who have been dismissed. The following cases allowed admission of such pleadings. *Dugan v. EMS Helicopters, Inc.,* 915 F.2d 1428 (10th Cir. 1990); *Haynes v. Manning,* 717 F. Supp. 730 (D. Kan. 1989); *Mason v. Texaco, Inc.,* 129 F.R.D. 542 (D. Kan. 1989), *aff'd, remanded on damages* 948 F.2d 1546 (10th Cir. 1991); and *Dreier v. Upjohn Co.,* 196 Conn. 242, 492 A.2d

164 (1985). Other cases have not permitted the introduction of such pleadings based primarily on the rationale advanced by the Lytles in the case at bar, *i.e.*, admission of such pleadings frustrates the liberal pleading and joinder rules. *Garman v. Griffin,* 666 F.2d 1156 (8th Cir. 1981); *Bargman v. Economics Laboratory Inc.,* 181 Ill. App. 3d 1023, 537 N.E.2d 938, *cert. denied* 127 Ill. 2d 611 (1989); *Larion v. Detroit,* 149 Mich. App. 402, 386 N.W.2d 199 (1986); *Littell v. Bi-State Transit Development Agency,* 423 S.W.2d 34 (Mo. App. 1967).

Stearns relies on *Haynes v. Manning,* 717 F. Supp. 730. In *Haynes,* a car was purchased by the Hayneses from a car dealer who provided a federal odometer statement which indicated the mileage to be 100,000 miles less than the actual miles. Manning bought the car new, put over 100,000 miles on the car, causing the odometer to roll over, and sold the car to a car dealer, indicating the mileage was 100,000 miles less than the actual mileage. In total, the car was purchased and sold by four car dealers before the Hayneses purchased the car. The Hayneses sued everyone in the chain of title. Three of the car dealers settled. The case went to trial against Manning and the remaining car dealer. The trial court admitted evidence that the Hayneses had settled with the three car dealers. Judge Saffels held that the evidence that the Hayneses had settled was admissible, relying in part on the abandoned pleadings doctrine. 717 F. Supp. at 733.

*Haynes* cited *Dreier v. Upjohn,* 196 Conn. 242, as does Stearns. The Connecticut Supreme Court in *Dreier* reasoned that the circumstances under which the pleading is made go to the weight to be accorded the statements rather than to their admissibility, as with any other pleading. 196 Conn. at 247. The plaintiff in *Dreier* argued that only factual allegations rather than legal conclusions fall within the rule of admissibility of admissions. The Connecticut Supreme Court rejected this argument, reasoning that the type of statement goes to the weight of the admission rather than its admissibility. 196 Conn. at 248-49.

*Garman v. Griffin,* 666 F.2d 1156, expressed a contrary view. Ronald Garman was run over and killed by a school bus from which he had exited. His parents brought a wrongful death action against the school bus driver, on a negligence theory. Shortly

before the statute of limitations had run, the Garmans amended their complaint and joined the alleged seller of the bus under a strict liability theory. It later developed that the Garmans had sued the wrong bus seller and summary judgment was granted in favor of that bus seller. During the trial, the defendant bus driver was permitted to read the strict liability allegation against the alleged bus seller in the amended petition. The jury returned a verdict for the bus driver.

The Eighth Circuit reversed and remanded for a new trial, finding that admission of such evidence constituted prejudicial error. The *Garman* court noted that some factual allegations should be received in evidence as admissions. For example, if plaintiffs complaint alleged that the accident occurred on an icy road and proof showed the accident occurred on the Fourth of July, this factual allegation is an admission admissible in the case. The Court of Appeals reasoned that the factual allegation is admissible if it relates to the conduct of the same defendant who is offering the evidence. 666 F.2d at 1158. The Court of Appeals analyzed the facts in *Garman* as follows:

"Here we are dealing with an admission in a pleading that (1) involves the conduct of a dismissed party not in the lawsuit at the time the evidence was admitted; (2) that does not involve the conduct of the plaintiffs or the plaintiff's decedent; and (3) that does not involve the conduct of the defendant. We are also dealing with an admission made in a complaint filed at the last opportunity to toll the statue of limitations." 666 F.2d at 1158.

*Garman* found that allowing admission of the amended complaint frustrated the liberal pleading and joinder provisions of the Federal Rules of Civil Procedure. (Fed. R. Civ. Proc. 8[e][2] [similar to K.S.A. 1991 Supp. 60-208(e)(2)], which allows inconsistent pleadings.) The *Garman* court stated:

"The use of pleading admissions in situations akin to the case under submission seems to us to be contrary to the spirit of the Federal Rules. Furthermore, it simply does not seem quite fair to these plaintiffs. A pleader in the Federal Courts should not have to forego a potential claim rather than run the risk of having such a claim used as an admission." 666 F.2d at 1160.

*Garman* reasoned the nonadmissibility holding to be the better and majority view. 666 F.2d at 1159.

Circuit Judge Arnold dissented in *Garman*. He saw no reason to deny admissibility because the amended pleading is directed to a person no longer a party. Further, he found that Fed. R. Civ. Proc. 11 (similar to K.S.A. 1991 Supp. 60-211) requires a good faith belief the pleading is grounded in fact. Pleadings should be regarded as factual, rather than fictional, and admissible. He also noted that the two counts in the amended complaint were not inconsistent. The amended complaint alleged that both defendants were responsible through " 'concurring acts and omissions.' " 666 F.2d at 1162. Judge Arnold recognized the danger or prejudice to the plaintiff or confusion of the jury, but found this consideration should be left to the discretion of the trial court.

A series of Missouri cases is in accord with the *Garman* majority view. *Macheca v. Fowler*, 412 S.W.2d 462 (Mo. 1967); *Cole v. Mo. Highway & Transp. Com'n*, 770 S.W.2d 296 (Mo. App. 1989); and *Littell v. Bi-State Transit Development Agency*, 423 S.W.2d 34.

A treatise on evidence supports exclusion:

"FRCP 8 entitles parties to plead hypothetically, inconsistently, and in the alternative. Where any variance between a pleading or answers to interrogatories and the evidence presented by a party is explainable as an attempt to take advantage of this liberality of modern pleading rules, which has all the greater impact because of similarly liberal joinder rules, use of the pleading as an evidential admission should be disallowed." 4 Louisell and Mueller, Federal Evidence § 425, 306.

In the case at bar, each claim in the second amended petition was set out as a separate count against different defendants. The counts were not pled in the alternative or hypothetically. Further, they are not necessarily inconsistent. Each count provided that the relevant defendant "caused and/or contributed" to Debbie's injuries and damages.

According to McCormick, the modern trend is to deny admission of such pleadings:

"The modern equivalent of the common law system is the use of alternative and hypothetical forms of statement of claims and defenses, regardless of consistency. It can readily be appreciated that pleadings of this nature are directed primarily to giving notice and lack the essential character of an admission. To allow them to operate as admissions would render their use ineffective and frustrate their underlying purpose. Hence the decisions with

seeming unanimity deny them status as judicial admissions, and generally disallow them as evidential admissions.

"The trend is to expand the application of the exception described above to the general rule of admissibility to include, not only the common law practice and modern hypothetical and alternative allegations, but in addition situations in which a more skillful pleader would have avoided the pitfalls of admissions by resorting to one of those techniques. * * * *The same trend is evident in cases involving separate actions against different defendants to recover for the same injury.* The trend is consistent with the prevailing view that the primary purpose of pleadings is to give notice and that alternative or hypothetical allegations are not usable as admissions, but the extent to which it will prevail is difficult to estimate." (Emphasis added.) McCormick on Evidence § 265, 781-82.

We apply the rationale of McCormick to the facts presented in the case at bar. The claims against Schroeder, Dr. Holmes, and Humana were added by the Lytles due to Stearns' allegation of comparative fault. Dr. Holmes was joined a few days before the statute of limitations ran. The second amended petition was filed before any defendants had settled. If Stearns was successful in proving fault of the other parties, the Lytles could not recover unless they had amended their petition to assert a claim against such parties. The Lytles exercised prudence by amending their petition to protect their interests. The second amended petition was admitted without any limiting instruction. Further, Stearns was permitted to cross-examine Robert Lytle, a layperson, regarding the second amended petition. Robert Lytle was unable to adequately explain the legal principles behind the petition. A jury may or may not be able to understand why the Lytles' attorney decided to sue certain parties initially while excluding others or the various legal theories under which counsel elected to proceed. In our view, such an understanding is doubtful.

Stearns alleges that the Lytles waived any complaint as to the prior pleadings cross-examination of Robert Lytle by failing to object at the time of cross-examination. The Lytles did fail to object at the time of cross-examination, but the trial court had noted earlier that the prior objection was a continuing one. Therefore, the Lytles have not waived the objection.

Stearns took full advantage of the second amended petition at trial. Stearns implied in closing argument that the Lytles had settled with everyone except Stearns and that they had been

compensated. The admission of the dismissed defendant/settlement evidence is particularly prejudicial considering that Stearns did not present evidence sufficient to compare the fault of all the settling defendants. Only the fault of Jones and Dr. Holmes was compared; yet, Stearns was allowed to imply that all the other dismissed defendants were at fault and had settled.

Here we are dealing with conclusory allegations as to law, not with objective facts, as evidentiary admissions contained in prior pleadings. The admissions introduced concerned allegations of conduct by former adverse parties. We recognize that each future case will present a varied set of facts. Trial court discretion will be exercised on questions of admissibility of and cross-examination concerning prior pleadings. Settlement is to be encouraged. K.S.A. 1991 Supp. 60-211 requires counsel to express a good faith belief that a pleading is grounded in fact. We decline to attempt to craft a Procrustean rule for the resolution of all situations relating to the admission of and cross-examination regarding prior pleadings.

We do, however, set out twin concepts to be considered by the trial judge.

(1) A lay party witness should not be cross-examined regarding theories or allegations of liability asserted against a former party who is no longer in the lawsuit, if that former party was brought into the litigation as a party after being designated by an initial defendant for comparative negligence purposes under K.S.A. 1991 Supp. 60-258a. (In the case at bar, Schroeder, EDP, Humana, and Dr. Holmes are in this comparative designation category.)

(2) Written pleadings asserting theories or allegations of liability addressed against a former party under the circumstances described in paragraph one above also should generally be excluded.

The combined effect of the introduction as evidence of the second amended petition and the cross-examination of Robert Lytle regarding prior or abandoned pleadings was error which denied the Lytles a fair trial and requires reversal.

Except for the instruction issue concerning aggravation of a pre-existing condition, our reversal renders as moot the additional appellate questions raised by the Lytles.

## Instruction—Pre-existing Condition

The Lytles requested a jury instruction on damages for their survival claim modeled after PIK Civ. 2d 9.01 (1990 Supp.). The requested version included:

"A. Pain, suffering, disabilities, or disfigurement, and any accompanying mental anguish suffered by Debbie Lytle up to and including the date of her death;

. . . .

"C. Aggravation of any pre-existing ailment or condition."

The trial court proposed and gave virtually the same instruction deleting from paragraph A "disabilities, or disfigurement," and deleting paragraph C, "Aggravation of any pre-existing ailment or condition," in its entirety.

The Lytles also proposed that the trial court give an instruction modeled after PIK Civ. 2d 9.011 (1990 Supp.), further defining such damages. The Lytles' requested version included:

"1. Non-economic loss. This type of damage includes (a) pain and suffering and (b) disability, disfigurement and any accompanying mental anguish suffered by plaintiff up to and including the date of her death."

The trial court gave the instruction but deleted the phrase "and (b) disability, disfigurement."

The Lytles objected, arguing: (1) There was evidence from which the jury could find that Stearns enhanced or aggravated Debbie's injuries which were existing at the moment he arrived; and (2) because Angela Jones' fault is being compared, the injuries from the collision resulting in disability and disfigurement, such as the broken mandible and fractured ribs, should be instructed on.

The trial court overruled the Lytles' objections, reasoning: (1) PIK Civ. 2d 9.01 regarding aggravation of a pre-existing injury contemplates pre-existing injuries sustained before the occurrence being tried (an automobile collision); and (2) because the Lytles have no claim against Jones, it would be unfair to Stearns to instruct on injuries or damages caused by Jones.

As support for the aggravation of a pre-existing injury instruction, the Lytles assert that by the time their case reached trial, Stearns was the only defendant. Their claim revolved around the theory that the injuries Debbie received in the automobile col-

lision were treatable. According to the Lytles, Debbie would have lived but for Stearns' aggravation of her injuries and his failure to procure timely definitive care, prolonging her pain and suffering. The Lytles reason that the absence of an instruction on aggravation of a pre-existing condition could have had an effect on the jury's assessment of fault. According to the Lytles, without an instruction on damages for such aggravation, the jury had nothing to blame Stearns for.

Stearns argues that an instruction on aggravation of a pre-existing injury was not supported by the evidence. In the alternative, Stearns argues that any error was harmless error in light of the jury's finding of 0% fault.

Any error in instructions on damages is harmless where the plaintiff has failed to convince the trier of fact that the defendant is liable. *Patterson v. Burt,* 213 Kan. 463, 468, 516 P.2d 975 (1973). However, because we are reversing and remanding for a new trial, the damage instruction issue should be discussed. Our observations contained in this portion of the opinion relate to the record developed at trial. We do not know what strategies and instruction requests will arise upon retrial.

K.S.A. 1991 Supp. 60-258a requires that all parties to an occurrence in a negligence action must have their rights and liabilities determined in one action. *Mick v. Mani,* 244 Kan. 81, 87, 766 P.2d 147 (1988). This "one-action" rule applies to successive tortfeasors where it is claimed that medical malpractice, following an accident, contributed to the injuries. 244 Kan. at 879. See *Teepak, Inc. v. Learned,* 237 Kan. 320, 329, 699 P.2d 35 (1985). Each tortfeasor should pay for only that tortfeasor's share of the damages. *Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 (1978).

The trial court should instruct only on those items of damage for which there is some evidence to base an award. *Bridges v. Bentley,* 244 Kan. 434, 441, 769 P.2d 635 (1989).

In the case at bar, the occurrence was an automobile accident. There were no pre-existing injuries prior to the accident. The evidence at trial did not disclose that Stearns enhanced the injuries caused by the accident. The alleged negligence, if proven, contributed to the prolonging of Debbie's pain and suffering and arguably her death. The claim of prolonging pain and suffering

should be dealt with in closing argument rather than by a specific aggravation of a pre-existing condition jury instruction. Under the facts developed at trial, the trial court was correct in refusing to instruct on aggravation of a pre-existing injury. The Lytles raise an additional issue in their brief, although they do not list it separately as required by Supreme Court Rule 6.02(c) and (e) (1991 Kan. Ct. R. Annot. 24). See *Jack v. City of Olathe,* 245 Kan. 458, 462, 781 P.2d 1069 (1989), and *State v. Trudell,* 243 Kan. 29, 38, 755 P.2d 511 (1988). The Lytles argue that the trial court should have instructed the jury on disability and disfigurement; however, they cite no authority in support of their argument.

The trial court instructed on pain and suffering and any accompanying mental anguish up to Debbie's death. Debbie lived approximately 2-3 hours after the accident. Under the facts of this case, the trial court did not err in refusing to instruct on disability and disfigurement.

The trial court reasoned, in refusing to instruct on disability and disfigurement, that because Jones was not a defendant, any damages caused by her should not be instructed on. Although we agree with the ruling, we disagree with the trial court's rationale. Jones' fault was compared by the jury. To allow comparison of Jones' fault, without allowing consideration of damages that may have been caused by her, would be unfair.

Affirmed in part, reversed in part, and remanded for a new trial.