(140 P.3d 1051)
No. 93,148

MICHAEL LEE HALEY, A MINOR, BY AND THROUGH KASEY HALEY AND RICK HALEY, HIS PARENTS, NATURAL GUARDIANS AND NEXT FRIENDS, *Appellants/Cross-appellees,* v. MICHAEL P. BROWN, M.D., TERESA M. CRADDOCK, M.D., TIFFANY A. VONWALD, M.D., KIMBERLEE A. MCKAY, M.D., AND WESLEY MEDICAL CENTER, L.L.C., A DELAWARE CORPORATION, D/B/A WESLEY MEDICAL CENTER, *Appellees,* AND CHAND SUP YOON, M.D., *Appellee/Cross-appellant.*

Opinion filed August 25, 2006.

*Jeffrey L. Carmichael, Cameron V. Michaud,* and *Richard A. Kear,* of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, for appellants.

*Terry L. Mann, David S. Wooding,* and *Roger E. McClellan,* of Martin, Pringle, Oliver, Wallace & Bauer, LLP, of Wichita, for appellee Kimberlee A. McKay, M.D.

*Amy S. Lemley, Brooke Bennett Aziere, James D. Oliver,* and *Holly A. Dyer,* of Foulston Siefkin, LLP, of Wichita, for appellee/cross-appellant Chang Sup Yoon, M.D.

*Steven C. Day* and *Chris S. Cole,* of Woodward, Hernandez, Roth & Day, L.L.C., of Wichita, for appellee Wesley Medical Center, L.L.C.

Before MALONE, P.J., HILL, J., and BRAZIL, S.J.

HILL, J.: This is a medical malpractice appeal. We consider three issues: whether a trial court can legally instruct a jury that they can attribute fault to a nurse who is not a party to the lawsuit instead of the defendant medical center; whether settlement evidence was improperly submitted to the jury; and, finally, whether a proposed jury instruction that details restrictions placed upon doctors practicing medicine under a temporary education license should have been given.

We make three rulings. First, while it violates the statute to substitute nonparties for parties in making a fault determination, under the facts of this case, we hold that the trial court's error was harmless because all of the jury instructions, taken as a whole, along with comments of counsel eliminated any possible confusion in the jury, and we see no prejudice to the substantial rights of the plaintiffs arising from the error. Second, our review of the record reveals that no settlement evidence was actually submitted to the jury. Finally, the proposed instruction was inapplicable because the doctor was actually practicing under a temporary postgraduate permit authorized by a different statute than that quoted in the proposed instruction. Accordingly, we affirm. Because we affirm, we will not consider the cross-appeal.

### Facts and Prior Proceedings

This lawsuit arose from the birth of Michael Lee Haley at Wesley Medical Center in Wichita on November 20, 2000. Michael was born with severe brain damage and cerebral palsy. When Michael was delivered by Cesarean section, he was described as limp, unresponsive, and blue. Soon after delivery, Michael was resuscitated, intubated, and transferred to a neonatal intensive care unit.

In February 2003, Michael, through his parents, Kasey and Rick Haley (collectively referred to as "the Haleys") filed a petition against Michael P. Brown, M.D., who suggested that Kasey should be induced into labor at 38 weeks; Kimberlee A. McKay, M.D., who was a first-year resident in the University of Kansas School of Medicine-Wichita obstetrics and gynecology program; Teresa M. Craddock, M.D., Brown's partner, who performed the Cesarean section; Tiffany A. VonWald, M.D., who was a second-year resident who assisted at the Cesarean procedure; and Chang Sup Yoon, M.D., who administered a spinal block and acted as the anesthesiologist during the surgery.

Prior to trial, the plaintiffs dismissed Dr. Craddock and Dr. VonWald and reached a confidential settlement with Dr. Brown. The claims against the remaining defendants proceeded to trial. After a 9-week trial, the jury returned a finding that none of the

remaining defendants were at fault. Additional facts will be presented with each appellate issue.

## Three Issues on Appeal

The Haleys argue that the trial court's action of substituting, in the jury instructions and verdict form, the name of Amely Louise Betzen, a nurse who worked at Wesley Medical Center and not a party to the lawsuit, for the Wesley Medical Center, a named defendant, violated K.S.A. 60-258a. They also claim that the district court erred in allowing evidence to be admitted regarding their settlement with Dr. Brown. Finally, the Haleys argue that their proposed instruction that said: "The temporary education license shall confer upon the holder the right and privilege to practice medicine and surgery and shall obligate the holder to comply with all requirements of such license" was necessary in order to ensure that the jury was not confused regarding Dr. McKay's responsibilities and potential for liability due to a comment made by her attorney during opening statement. We will address these issues in that order, setting out first the appropriate standard of review for each.

## Substitution of Nurse's Name for Medical Center

During the jury instructions conference, the trial court stated that it had deleted Wesley Medical Center from the appropriate instruction as a party to whom the jury could assign fault and substituted Nurse Betzen as a party to whom fault could be assigned. The plaintiffs objected on the grounds that Nurse Betzen was not a party. The trial court responded by stating that if Nurse Betzen was assigned fault, then another instruction that advised that Wesley Medical Center was liable for its employees' actions would be applicable. Consistent with this ruling, the trial court did not list Wesley Medical Center as a party to which fault could be assigned on the verdict form given to the jury.

This substitution was not done at the request of any party on the record. We note that in the parties' proposed jury instructions, Wesley Medical Center listed its own name on the comparative

fault instruction and verdict form and did not list the name of the nurse.

## Standard of Review

The Haleys argue that the trial court's substitution action violated K.S.A. 60-258a. Because the resolution of this issue involves the interpretation of a statute, this court exercises unlimited review. See generally *Cooper v. Werholtz*, 277 Kan. 250, 252, 83 P.3d 1212 (2004) (stating that appellate courts have unlimited review over issues involving statutory interpretation).

## Statute Violated But Harmless Error

This issue forces us to deal with the fundamental nature of comparative fault jurisprudence in Kansas. Our comparative fault statute requires the "weighing of the causal negligence, if any, of all *parties* whose conduct brought about the harm, and the consequent imposition of individual liability for damages based upon the proportionate fault of each party to the occurrence." (Emphasis added.) *Arredondo v. Duckwall Stores, Inc.*, 227 Kan. 842, 844-45, 610 P.2d 1107 (1980).

The applicable statute states:

"Where the comparative negligence of the parties in any such action is an issue, the jury shall return special verdicts, or in the absence of a jury, the court shall make special findings, determining the percentage of negligence attributable to each of the parties, and determining the total amount of damages sustained by each of the claimants, and the entry of judgment shall be made by the court. No general verdict shall be returned by the jury." K.S.A. 60-258a(b).

A plain reading of K.S.A. 60-258a(b) indicates that the jury should make a comparative fault determination for each *party* to the lawsuit. While Nurse Betzen was a person whose conduct was considered while determining Wesley Medical Center's liability, Nurse Betzen was not a party. Since Wesley Medical Center was a party to the lawsuit, the trial court's decision to exclude Wesley Medical Center from the special verdict form and the jury instruction explaining to whom fault could be attributed was erroneous.

It appears the trial court thought negligence is synonymous with fault. That is incorrect. The classic definition of negligence is:

"Negligence is the lack of ordinary care . . . . It is the failure of a person to do something that an ordinary person would do, or the act of a person in doing something that an ordinary person would not do, measured by all the circumstances then existing." *Beck v. Kansas Adult Authority*, 241 Kan. 13, 33, 735 P.2d 222 (1987).

In contrast, the concept of fault consists of *both* negligence and causation: "A party is at fault when he or she is negligent and his negligence caused or contributed to the event which brought about the injury or damages for which a claim is made." *Sharples v. Roberts*, 249 Kan. 286, 295, 816 P.2d 390 (1991).

If Wesley Medical Center or one of the other defendants believed that Nurse Betzen's fault should be considered, they could have made her a party. The comparative fault statute calls for such a joinder:

"(c) On motion of any *party* against whom any claim is asserted for negligence resulting in death, personal injury, property damage or economic loss, any other person whose causal negligence is claimed to have contributed to such death, personal injury, property damage or economic loss, shall be joined as an additional party to the action." (Emphasis added.) K.S.A. 60-258a(c).

The comparative fault statutory scheme is simple. The plaintiff can choose the parties she wishes to sue, and the defendants can bring in others if they are considered to be at fault. The court has no authority to pick the parties.

This substitution by the trial court also eliminated from the jury's consideration the negligence of any other Wesley Medical Center employee. The Haleys argued this in their reply brief, stating that one of their experts (Dr. Beth Alexander) mentioned the staff of Wesley Medical Center:

"[T]*he staff* of Wesley failed to anticipate and adequately notify the physician staff responsible for Kasey's care and delivery as she developed more ominous signs of difficulty with her labor and the fetus not tolerating labor. [T]*hey failed* to adequately monitor this infant during the period of time preceding delivery from the time she was moved form the labor room through delivery. *They failed* to accelerate or notify people who had the ability to accelerate or notify people who had the ability to accelerate more urgent action to get this child delivered." (Emphasis added.)

Furthermore, by substituting a nonparty for a party, the court was replacing an artificial being, a corporate medical center, with

a more sympathetic figure—a nurse. We see why Wesley Medical Center did not object to this procedure.

Having said all this, we do consider the error harmless because of the circumstances of this trial. When the jury instructions are read together and the underlying facts are considered, it appears that the jury was properly instructed and any error is deemed harmless.

Jury Instruction No. 8 stated:

"Wesley Medical Center is a corporation and can act only through its officers and employees. The negligence of an officer or employee acting within the scope of his or her employment is the negligence of the corporation.

"The nurses who provided care to plaintiff at Wesley Medical Center are employees of Wesley Medical Center."

The claims instruction, Jury Instruction No. 14, set forth the Haleys' contentions and the defendants' denials. One of the Haleys' contentions stated: "Defendant Wesley Medical Center through Nurse Amely Betzen was negligent as set forth below." All of the Haleys' contentions regarding Wesley Medical Center involved alleged errors committed by Nurse Betzen. Instruction No. 14 informed the jury that Wesley Medical Center was the defendant involved in the case and that it was Nurse Betzen's actions that were the sole basis of the claims against Wesley Medical Center.

Furthermore, we think that any possible confusion about this was eliminated for the jury when the following exchange occurred during Wesley Medical Center's closing argument:

"MR. MICHAUD: Objection, Your Honor. The nurse is not a defendant in this case and she's not going to be held liable personally.

"MR. DAY: The point is well taken, Your Honor. I will rephrase.

"THE COURT: Okay.

"MR. DAY: For a nurse who is being blamed, a hospital will be held liable for the conduct. Make no mistake about that. I represent Wesley. Wesley has been sued on the basis of a nurse's conduct. Nurse Amely Betzen is whose conduct I am defending."

When the entire record is considered, it is clear that the Haleys' claim against Wesley Medical Center was based solely on Nurse Betzen's conduct. Betzen was the nurse responsible for caring for Kasey and reporting problems. The Haleys have not pointed to any

other Wesley Medical Center employee by name that erred in the delivery process. Vague generalizations about "the staff" are insufficient to support their argument. Harmless error is error which does not prejudice the substantial rights of a party. It affords no basis for reversal of a judgment and must be disregarded. *Smith v. Printup*, 262 Kan. 587, 603, 938 P.2d 1261 (1997). We consider this error to be harmless, considering all of the facts and circumstances.

### No Settlement Evidence Given to Jury

During Kasey's direct examination, her attorney asked some questions regarding various equipment that would assist in caring for Michael. Kasey was asked what she paid for the equipment she had already obtained and what the price was of the equipment she had not yet obtained. Kasey testified that she had not been able to get a handicapped car seat, which would cost at least $1,700, and that she was currently using a normal car seat that she bought at Wal-Mart. She went on to state that a "stander" would help Michael stand and that it would cost at least $2,500. Kasey stated that she had not purchased a stander because she could not afford it. No objection was made concerning any of this testimony.

Sometime later, outside the presence of the jury, Wesley Medical Center's attorney argued that the issue of poverty was not a proper argument and that by offering this evidence the Haleys opened the door to allow the admission of evidence regarding the money the Haleys would be receiving from the settlement with Dr. Brown. An attorney for Dr. Yoon also joined in support of this argument.

Eventually, the trial court permitted, during her cross-examination, a mention of a change of circumstances for the Haleys:

"Q: Mrs. Haley, you recall giving testimony yesterday to the effect that there were certain devices for Michael's care that you had not been able to afford to purchase. Do you recall that testimony?

. . . .

"A: Yes, I do.

"Q: Mrs. Haley, there has been a change in circumstances which will make it possible to purchase such equipment for Michael in the near future, is that not correct?

"A: Yes."

That is all of the settlement testimony complained about by the Haleys.

## Standard of Review

Ordinarily such questions on the admission of evidence are matters of judicial discretion:

"[T]he admission of evidence lies within the sound discretion of the trial court. An appellate court's standard of review regarding a trial court's admission of evidence is abuse of discretion. [Citation omitted.] An abuse of discretion must be shown by the party attacking the evidentiary ruling, and 'exists only when no reasonable person would take the view adopted by the district court.' [Citation omitted.]" *Garrett v. Read,* 278 Kan. 662, 667, 102 P.3d 436 (2004).

But when exclusionary rules are involved, the existence of such an exclusionary rule is a question of law, which is entitled to de novo review. But if an exclusionary rule did not prohibit the introduction of this evidence, then the abuse of discretion standard would apply. See generally *Griffin v. Suzuki Motor Corp.,* 280 Kan. 447, 451, 124 P.3d 57 (2005) (finding that whether statute excluded certain evidence was question of law and that district court did not have discretion to admit evidence if statute prohibited admission).

## Analysis

The Haleys argue that admission of this evidence violated the rule excluding evidence that a plaintiff has settled with another defendant. We reject this argument.

First we examine the statutes. K.S.A. 60-452 states:

"Evidence that a person has, in compromise or from humanitarian motives furnished or offered or promised to furnish money, or any other thing, act or service to another who has sustained or claims to have sustained loss or damage, is inadmissible to prove his or her liability for the loss or damage of any part of it."

Then, K.S.A. 60-453 provides: "Evidence that a person has accepted or offered or promised to accept a sum of money or any other thing, act or service in satisfaction of a claim, is inadmissible to prove the invalidity of the claim or any part of it." While these exclusionary rules do generally prevent the admission of evidence

regarding settlements to prove the liability of a party, the statutes did not affect the testimony at issue in this case.

These rules prohibit the admission of evidence of settlement to prove or disprove liability. Even if the evidence here is considered to be evidence of a settlement, it was not offered by the defendants to prove the invalidity of any part of the Haleys' claim. Instead, the evidence was admitted for the limited purpose of curing any prejudice that might have resulted from any improper evidence of poverty presented earlier by Kasey.

Next we examine the cases that concern settlement evidence, *Ratterree v. Bartlett*, 238 Kan. 11, 707 P.2d 1063 (1985), and *Lytle v. Stearns*, 250 Kan. 783, 830 P.2d 1197 (1992). Both generally support the proposition that evidence of a settlement should be precluded in situations similar to the present case. But an examination of the facts of both reveals that they are not pertinent to this case.

In *Ratterree*, the court announced the applicable rule for "Mary Carter" type settlements:

"When a settlement agreement is entered into between the plaintiff and one or more, but not all, alleged defendant tortfeasors, the parties entering into such agreement shall promptly inform the court in which the action is pending and the other parties to the action of the existence of the agreement and its terms. If the action is tried to a jury and a defendant who is a party to the agreement is a witness, the court shall, upon motion of a party, disclose the existence and content of the agreement to the jury unless the court finds in its discretion such disclosure to the jury will create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." 238 Kan. at 29.

Later, this rule was clarified in *Lytle*:

"The *Ratterree* rule is broad enough to include any confidential settlement in any tort action involving multiple defendants when the settling defendant is a witness and either remains a party to the action or retains some financial interest in the litigation." 250 Kan. at 791.

Having said that, the facts in *Lytle* revealed that the settling defendants at issue received a full release and did not retain any financial interest in the litigation. It was therefore error for the trial court to admit evidence of settlement with such facts. See 250 Kan. at 791-92.

We believe the rule announced in *Ratterree* and further discussed in *Lytle* does not apply in this case. It is undisputed that Dr. Brown was dismissed from the action and that he did not retain any financial interest in the case. Accordingly, the rule set forth in *Ratterree* could not be used to admit evidence regarding the settlement with Dr. Brown.

The testimony admitted here was not evidence of the settlement with Dr. Brown. The only thing the jury learned from the testimony was that a change of circumstances had occurred that would now allow the Haleys to purchase the medical equipment that she once said they could not afford. No mention was made of Dr. Brown or even that the "change of circumstances" was money the Haleys would receive from a settlement. Additionally, no further elaboration or discussion was requested by Wesley Medical Center's attorney on this point. Thus, evidence of a settlement was not expressly presented to the jury, unlike the authorities cited by the Haleys.

The cases cited by the Haleys simply do not apply here. This case is far different. In those cases, the jury was informed that a settlement had been reached between the parties to the lawsuit. In this case, the jury was not informed that the Haleys' ability to purchase the necessary equipment was based on a settlement that had been reached with Dr. Brown. The allowance of this limited inquiry by the district court did not constitute an abuse of discretion.

The testimony at issue here is more properly classified as evidence of a collateral source of recovery. Evidence of a collateral source is also generally inadmissible. *Zak v. Riffel*, 34 Kan. App. 2d 93, 107, 115 P.3d 165 (2005). But the defendants argue that the testimony was admissible on two different grounds. First, the defendants argue that evidence of the Haleys' ability to purchase the necessary medical equipment for Michael was admissible for impeachment purposes. The basis for this argument is the assumption that Kasey Haley was untruthful when she stated that she could not afford the medical equipment necessary for Michael. The facts do not support this claim.

The two pieces of equipment that Kasey testified that she had not obtained were a handicapped car seat and a stander. Kasey was not asked and did not offer any explanation why she had not purchased the car seat. Instead, she gave the cost of the item and only stated that she had not yet obtained one. It is clear that Kasey was never asked and did not comment on her future ability to afford the stander. Instead, she was only asked why she had not purchased one at that point. Since it is undisputed that the Haleys had not received the settlement proceeds from Dr. Brown at the time the questions were asked, no evidence exists showing that Kasey was untruthful in claiming that she could not afford the stander. Thus, evidence of a collateral source was not proper to impeach Kasey.

The second ground for the admission of this evidence, according to the defendants, is under the curative admissibility doctrine. In *McKissick v. Frye*, 255 Kan. 566, 578-79, 876 P.2d 1371 (1994), the court explained the curative admissibility doctrine:

"The doctrine of curative admissibility allows a party to present otherwise inadmissible evidence on an evidentiary point where an opponent has 'opened the door' by introducing similarly inadmissible evidence on the same point.

". . . Kansas courts follow the rule that if one party offers an inadmissible fact into evidence, the other party may introduce a similar inadmissible fact 'whenever it is needed for removing an unfair prejudice which might otherwise have ensued from the original evidence.' [Citation omitted.] If the evidence is admissible, the doctrine of curative admissibility does not apply."

It appears the district court here changed its mind regarding the best method of negating any prejudice that resulted from Kasey's testimony regarding her inability to pay for the stander. The court originally had decided that a jury instruction that informed the jury to decide the case without sympathy or prejudice was the best method. But the court later determined that allowing defense counsel to pose a very narrow question to Kasey was the best method. This decision fell within the discretion of the trial court. We do not find this to be an abuse of the trial court's discretion. The court's application of the curative admissibility doctrine was proper.

### Proposed Instruction Not Needed or Accurate

The Haleys' proposed a jury instruction that stated: "The temporary education license shall confer upon the holder the right and

privilege to practice medicine and surgery and shall obligate the holder to comply with all requirements of such license." The basis for this instruction was K.S.A. 65-28,123(c), which contains identical language. It was refused by the trial court. They offered this instruction in response to a comment made by Dr. McKay's attorney during opening statement:

"Mr. Carmichael, in his opening statement, said that Dr. McKay was a doctor fully licensed to practice medicine. That's not true. She had a temporary permit during her first year to practice under the supervision of an attending physician."

The Haleys argue that the instruction was necessary in order to ensure that the jury was not confused regarding Dr. McKay's responsibilities and potential for liability due to the comment made by Dr. McKay's attorney during his opening statement.

We are not persuaded by this argument. Dr. McKay was not practicing under a temporary education license under K.S.A. 65-28,123. Instead, she was practicing under a temporary postgraduate permit under K.S.A. 65-2811. That statute provides:

"(a) The board may issue a temporary permit to practice the appropriate branch of the healing arts to any person who has made proper application for a license by endorsement, has the required qualifications for such license and has paid the prescribed fees, and such permit, when issued, shall authorize the person receiving the permit to practice within the limits of the permit until the license is issued or denied by the board, but no more than one such temporary permit shall be issued to any one person without the approval of ⅔ of the members of the board.

"(b) The board may issue a postgraduate permit to practice the appropriate branch of the healing arts to any person who is engaged in a full time, approved postgraduate training program; has made proper application for such postgraduate permit upon forms approved by the board; meets all qualifications of licensure, except the examinations required under K.S.A. 65-2873 and amendments thereto and postgraduate training, as required by this act; has paid the prescribed fees established by the board for such postgraduate permit; has passed such examinations in the basic and clinical sciences approved under rules and regulations adopted by the board; and, if the person is a graduate of a foreign medical school, has passed an examination given by the educational commission for foreign medical graduates.

"(c) The postgraduate permit issued under subsection (b) shall authorize the person receiving the permit to practice the appropriate branch of the healing arts in the postgraduate training program while continuously so engaged but shall not authorize the person receiving the permit to engage in the private practice of the healing arts.

"(d) A postgraduate permit issued under subsection (b) shall be canceled if:
(1) The holder thereof ceases to be engaged in the postgraduate training program; or
(2) the holder thereof has engaged in the practice of the healing arts outside of the postgraduate training program."

This statute clearly indicates that a doctor who receives a temporary permit under this law must practice within the postgraduate training program. While the statute does not indicate that a doctor who has received a permit under this section must practice under the supervision of an attending physician, it appears such a requirement was part of the postgraduate training program in which Dr. McKay was involved. She testified regarding the limitations that she believed applied to first-year residents, such as herself, when practicing in the residency program. The Haleys have not presented any evidence indicating that Dr. McKay was not required to practice under the supervision of an attending physician. Accordingly, the Haleys have not proven that Dr. McKay's attorney's statement was inaccurate. Therefore, there was no need for their proposed instruction, and there was no error because the court failed to give it to the jury.

Affirmed.